HAZLETON, Adm'r etc., vs. THE UNION BANK OF COLUMBUS.

PLEADING. *(1–4) Complaint and answer both liberally construed where ob-
jections to them not taken until evidence in.*

BANKS — DEPOSITS. *(5–7) Moneys deposited by A., who takes certificate
payable to order of B. Liability of bank for the deposit.*

DEPOSITION. *(8–11) Right of party to use deposition taken and filed by op-
posite party. What parts of such deposition he may use.*

EVIDENCE. *(11) Original letters attached to deposition.* *(12) As to gen-
uineness of signature.* *(13, 14) Admissions of agent.*

REVERSAL OF JUDGMENT. *(15, 16) When judgment not reversed for errors
in admission of evidence, or in instructions.*

1. A greater latitude of presumption will be indulged to sustain a com-
plaint where the objection to its sufficiency is first taken at the trial,
after an issue of fact made thereon, than where it is taken by de-
murrer.

2. A complaint which avers that on or about August 20, 1865, one B. de-
posited with the defendant bank $2,500, and left the same with de-
fendant, and that B. left said sum with defendant when he died (his
death being previously averred), and that defendant had refused to
pay over said sum, on demand, to plaintiff, the administrator of B.'s
estate — *held* to show sufficiently, under the code, a cause of action in
plaintiff's favor, no objection having been taken to it before the trial.

3. The answer denies " that B. did, on or about the 20th of August, 1865,

Hazleton, Adm'r etc., vs. The Union Bank of Columbus.

deposit and leave with defendant $2,500, or that he left said sum of money with defendant when he died, as alleged in the complaint;" and it avers that on the 23d of August, 1865, one G. deposited with defendant a sum of money, and took a certificate of deposit in B.'s name, by which said sum was made payable to B.'s order on return of the certificate properly endorsed; that in due course of business said certificate was presented to defendant properly endorsed by B., and payment thereof demanded, and it was duly paid, etc.; and that "this was the only business transaction" of the defendant bank, "in which the name of said B. in anywise appears, or in which said B. had any interest whatever." The objection that this answer raises no issue except as to the genuineness of the indorsement not having been taken until the court came to instruct the jury: *Held*, that the answer must be treated as denying that the money deposited belonged to B.

4. Proof was made, without objection, that a debtor of B. paid the money to G. in B.'s presence, to be used in buying a farm for G.'s wife; that G. afterwards deposited the money in the defendant bank, and took a certificate of deposit payable to B.'s order; that B. immediately endorsed said certificate, and delivered it to G.'s wife for her use, and she delivered it to G. for safe keeping; that a farm was purchased by G.'s wife, with B.'s consent, the conveyance of which he directed to be made to her; and that the day after B.'s death, G. presented the certificate, and received payment thereof from the defendant, and said farm was paid for with the proceeds thereof. *Held*, that there was no variance which misled either party, and the court properly directed the jury to find according to the evidence, and might have ordered an immediate amendment of the pleadings without costs.

5. If the money deposited by G. in this case belonged to B., but B. endorsed the certificate of deposit, and delivered it to G.'s wife for her own use, the bank is not liable to B.'s estate.

6. If B. endorsed the certificate and delivered it to G.'s wife, though he did not design it as a gift, but retained to himself the title, still the bank, having paid in accordance with the terms of its contract, is not liable.

7. If the money deposited actually belonged to G.'s wife, even if B.'s indorsement was a forgery, the bank is not liable.

8. Under C. C. Rule No. 65, a deposition taken on commission at the instance of one party, without any cross interrogatories, and duly filed by him, if not offered by him, may be read in evidence by the opposite party.

9. Statements in such a deposition not responsive to any question asked of the deponent, should be ruled out on objection of the party at whose instance the deposition was taken.

10. Evidence in a deposition material to the issue, given in answer to a *general* interrogatory, although not favorable to the party propounding such interrogatory, will not be suppressed on his objection, when the deposition is put in evidence by the opposite party.

11. When such evidence consists of original letters of plaintiff's intestate bearing upon the questions at issue, defendant, (though not the party at whose instance the deposition was taken) is entitled to offer them independently of the deposition, to which they are attached as exhibits.

12. On a question as to the genuineness of a signature, this court adopts the rule that a comparison of hands by a juxtaposition of two writings is wholly inadmissible, either as primary and sufficient or as corroborating evidence, except when the writing to be proved is of such antiquity that it cannot be proved in the ordinary way, or where the other writings to be compared with it are already in the case and before the jury for some other purpose.

13. The admissions of an agent as to a transaction in which he acted for his principal are admissible against the principal only when, being within the scope of his authority, they accompanied the transaction so as to be a part of the *res gestœ*.

14. Statements of the president of the defendant bank, made *after payment* of the certificate of deposit above described, and relating to such payment, were not admissible in evidence against the bank in this action.

15. A judgment will not be reversed for the admission of improper evidence, if appellant was not injured thereby.

16. Where the instructions given, as they must have been understood by the jury, stated the law with substantial correctness, the judgment will not be reversed for mere inaccuracies of expression therein.

APPEAL from the Circuit Court for *Jefferson* County.

The complaint, after alleging the death of Walter Buchanan, the appointment of plaintiff as administrator of his estate, and the corporate character of the defendant, is as follows: "That on or about the 20th day of August [1865], the said Walter Buchanan deposited with defendant, *The Union Bank of Columbus*, twenty-five hundred dollars, and left the same with the defendant, and that the said Walter Buchanan left the said sum of money in the said bank and with the said defendant when he died as aforesaid. That before the commencement of

Hazleton, Adm'r etc., vs. The Union Bank of Columbus.

this action, the plaintiff demanded the same of the said defendant, but the defendant declined and refused, and still declines and refuses, to pay the same."

The following are the material averments of the answer: "The defendant denies that Walter Buchanan did, on or about the 20th day of August, 1865, deposit and leave with this defendant twenty-five hundred dollars, or that he left said sum of money in said bank and with said defendant when he died, as alleged in said complaint. The defendant, further answering said complaint, alleges that on the 23d of August, 1865, one William Gardner deposited with this defendant a sum of money, and took a certificate of deposit therefor in the name of Walter Buchanan, by which certificate said sum of money was made payable to the order of said Walter Buchanan on return of said certificate properly indorsed; and that in due course of business, said certificate of deposit was presented to this defendant, properly indorsed by said Walter Buchanan, and payment thereof demanded, and was duly paid by this defendant, and said certificate delivered up and cancelled. And this defendant, upon its best knowledge, information and belief, alleges that the foregoing is the only business transaction of the said bank in which the name of said Walter Buchanan in any wise appears, or in which said Buchanan had any interest whatever."

It appears from the evidence that Walter Buchanan, in his lifetime, held certain notes secured by mortgage, against one Hargrave, to the amount of several thousands of dollars; that for some time before his death, Buchanan, who was a bachelor and quite wealthy, had intended to give to the wife of William Gardner, who was his niece, his claim against Hargrave, or the proceeds thereof when collected, to be used in the purchase of a farm for herself and her children.

The testimony tends to show that in May, 1865, Buchanan, who was then at his residence in Canada, sent the Hargrave notes and mortgage to Wm. Gardner, in Wisconsin, for Mrs. Gardner, and in execution of his previous intention to give

the proceeds of them to her; that Gardner failed to collect or obtain an adjustment of the claim, whereupon Buchanan came to Wisconsin in July following, and soon after effected a compromise of his claim by agreeing to accept in full satisfaction thereof the sum of $2,800; that said sum was paid to Gardner in the presence of Buchanan, and by his direction; that Gardner retained the same in his possession, used a portion of it with the knowledge and consent of Buchanan, and on the 23d day of August, 1865, deposited $2,500 with the defendant, receiving from it a certificate of deposit, in the usual form, payable to the order of Buchanan on the return of such certificate properly endorsed; that Gardner handed such certificate to Buchanan, who immediately wrote his name across the back of it and delivered it to Mrs. Gardner, saying to her at the same time, "This is yours — for you and your children; when you need it use it;" and that Mrs. Gardner delivered the certificate to her husband for safe keeping.

It also appears from the evidence that Buchanan died on the 16th day of October, 1865, and the day after his death Gardner presented the certificate to the bank with Buchanan's name endorsed upon it, and received full payment thereof, and thereupon the certificate was surrendered to the bank and cancelled. Before the death of Buchanan, and with his knowledge and approbation, Gardner and his wife contracted for the purchase of a farm, to be paid for out of the money in controversy, and Buchanan expressly directed that the conveyance of such farm should be made to Mrs. Gardner. The farm was paid for out of the proceeds of the certificate of deposit.

Several exceptions were taken by the plaintiff to the rulings of the circuit judge in admitting or rejecting testimony, and to his charge to the jury, a statement of which will be found in the opinion.

The defendant had a verdict and judgment; and the plaintiff appealed from such judgment.

*Mariner, Smith & Ordway*, and *Hazleton & Deering*, for ap-

pellant, contended that there is no proper denial in the answer of the allegation that Buchanan deposited the money (*Robbins v. Lincoln*, 12 Wis., 1; 2 Till. & Sh. Pr., 153, and, cases there cited); that it at least admits that Buchanan owned the certificate when it was indorsed, and raises only the issue that the same was indorsed by him; that if Buchanan had deposited the money, and the bank had given this certificate, the relation of debtor and creditor would exist between them and in an action by Buchanan to recover the money, the bank would not be heard to say that at the time of the deposit it was the money of a third person (Parsons on Notes and B., 99; Morse on Banking, 53; *Bank v. Hughes*, 17 Wend., 94); and that, on the other hand, if Gardner deposited it as Buchanan's money, he would not be heard to say as against the bank, nor would the bank be heard to say as against Buchanan or his indorser, that at the time of the deposit the money was Gardner's. *Marvin v. Ellwood*, 11 Paige, 366–371; Mylne & Cr., 19. 2. The court erred in refusing to allow evidence as to the admissions of Wheeler, the president of the defendant bank, relative to the deposit and the title to the money. The admissions were made within the scope of his authority, during a *search* for this property, and to an authorized agent of one rightfully interested therein; and if this money had not been legally paid on Buchanan's indorsement, they were made while defendant's liability and Wheeler's duty to pay the money yet continued. *The Bacon*, Newb., 278; *The Enterprise*, 2 Curtis, 317; *Am. Fur Co. v. U. S*, 2 Pet., 358; *U. S. v. Martin*, 2 Paine, 68; *Burnside v. Railroad Co.*, 47 N. H., 554; *Morse v. R. R. Co.*, 6 Gray, 450; *City Bank v. Bateman*, 7 H. & J., 104; *Spalding v. Bank*, 9 Barr, 29; *Franklin Bank v. Steward*, 37 Me., 528, dissenting opinion; *Bank of Monroe v. Field*, 2 Hill, 445; Morse on Banking, 480. 3. The court erred in admitting as evidence for the defendant the deposition of Wm. Moody, taken on commission, the defendant not having joined in the commission or filed cross interrogatories. The rulings to the contrary

in New York were based entirely on the language of their statute. 2 R. S., 376, § 23; 8 Bosw., 339; Till. & Sh. Pr., 406. In *Juneau Bank v. McSpedon*, 15 Wis., 629, both parties had joined in the commission, and were present at the examination, with a right then and there to put such questions as they saw fit. R. S., ch. 137, secs. 7, 8, 9. Here the rights of the parties as to examination were concluded on filing and serving the interrogatories. *Sayles v. Stewart*, 5 Wis., 8. Rule 59, under which the commission issued, gave defendant, (1) the right of interposing cross interrogatories, and (2) the right of having a commission in his own behalf for examination of the witness. On this point counsel cited *Gordon v. Little*, 8 S. & R., 555; *Smith v. Biggs*, 5 Sim., 391; *Wilson v. Calvert*, id., 194; *Harris v. Leavitt*, 16 Tex., 340; *Norvell v. Oury*, 13 id., 31. 4. The court erred in its instructions to the jury in respect to a donation of the mortgage or a donation of the money to Mrs. Gardner, prior to the alleged indorsement and delivery of the certificate of deposit. These instructions were wholly unwarranted either by the pleadings or the evidence. As to the conditions essential to a valid gift *inter vivos*, counsel cited *Trowbridge v. Holden*, 58 Me., 117; 10 Am. Law Reg., 537; 17 Wis., 512; *Kidder v. Kidder*, 33 Pa. St., 268; *Penfield v. Thayer*, 2 E. D. Smith, 312; *Reed v. Spaulding*, 42 N. H., 114; *Antrobus v. Smith*, 12 Ves., 39; *Pennington v. Gittings*, 2 Gill & J., 208; *Cotteen v. Missing*, 1 Mad. Ch., 108; *Chadoin v. Carter*, 12 B. Mon., 383; 1 Dyer, 49; *Campbell's Estate*, 7 Barr, 100. They further argued that even if the Hargrave mortgage was sent to Gardner with directions to collect and pay over the money to Mrs. Gardner, or to use it in purchasing a farm for her, the right of revocation remained in Buchanan until the delivery of the money to, or its actual investment for Mrs. Gardner, and her acceptance thereof (2 Kent, 577, 588; *Dow v. Prescott*, 12 Mass., 419; Dunlap's Agency, 185); and that before any such act on Gardner's part, his agency terminated by the death of Buchanan, and the undelivered and unaccept-

ed property descended to his heirs. Dunlap's Agency (4th ed.), 186, 187 ; 2 Kent, 870.

*Cook & Chapin* (with *John W. Cary*, of counsel), for respondent:

1. The complaint does not state a cause of action, because it does not show an indebtedness of the bank to Buchanan. 2. The positive testimony of William and Margaret Gardner to the fact of the endorsement in their presence, together with the letters of Buchanan, showing clearly his intention to give the money to Margaret Gardner, to be put into a home for herself and children, far outweighs the testimony of experts as to the genuineness of such endorsement. It was for the jury to determine. *Magee v. Osborn*, 32 N. Y., 669 ; *Pierce v. Northey*, 14 Wis., 9 ; *People v. Spooner*, 1 Denio, 343 ; *Phœnix Ins. Co. v. Philip*, 13 Wend., 81 ; *Jackson v. Phillipps*, 9 Cow., 94 ; *Wilson v. Kirkland*, 5 Hill, 182 ; *Poucher v. Livingston*, 2 Wend., 296 ; *Van Wyck v. McIntosh*, 14 N. Y., 439. 3. All questions as to the gift of the mortgage or of the money to Mrs. Gardner, were also properly submitted to and passed upon by the jury. *Grangiac v. Arden*, 10 Johns., 293. 4. Gardner, having deposited the money in the bank, and taken a certificate therefor, no matter to whose order it was made payable, had the right at any time, upon returning the certificate, indorsed or unindorsed, to demand of the bank a repayment of the money. *Bedell v. Carll*, 33 N. Y., 581 ; *Coggill v. Bank*, 1 id., 113 ; *Talbot v. Bank*, 1 Hill, 295 ; *Canal Bank v. Bank of Albany*, id., 287. 5. Evidence of admissions of the president of the bank made after the transaction was closed, was properly excluded. 18 N. Y., 255 ; 37 Me., 519 ; 52 id., 531 ; 39 id., 542 ; 11 S. & R., 179. 6. The deposition of Moody was properly admitted in evidence for the defendants. *Juneau Bank v. McSpedon*, 15 Wis., 629 ; *Echols v. Staunton*, 3 West Va., 574 ; *Weber v. Kingsland*, 8 Bosw., 415.

The following opinion was filed at the June term, 1872.

LYON, J. I. The counsel for the plaintiff claims that the answer contains no sufficient denial that Walter Buchanan, the plaintiff's intestate, deposited with the defendant $2,500 as charged in the complaint, and no averment that the money deposited belonged to Mrs. Gardner and not to Buchanan; and that the genuineness of the endorsement of the certificate of deposit is the only issue made by the pleading.

On the other hand, it is contended on behalf of the defendant, that the complaint fails to state facts sufficient to constitute a cause of action, in that it does not state that there was any contract between Buchanan and the bank that the money so deposited should be repaid on demand, or that it should be repaid at any time.

In the construction of pleadings, the maxim of the common law is, that everything shall be taken most strongly against the party pleading. 1 Chitty's Pl., 237. Applying to these pleadings this maxim of the common law, it is quite probable that both of the above positions are correct. The complaint does not expressly aver that the money deposited was to be repaid on demand, or that it was to be repaid in any other contingency; and it requires a liberal rule of construction to enable us to infer therefrom that it was so payable. And surely, unless the fact that by the contract of deposit the money was to be repaid to the depositor, is alleged in the complaint either expressly or by reasonable inference, the pleading fails to state a cause of action. Again, the denial in the answer that Buchanan deposited $2,500 in the bank and left it there until his death, contains a *negative pregnant*, and is bad pleading both at common law and under the code. The answer contains no express averment that the money deposited belonged to any person other than Buchanan; and, in order to hold that the answer denies that the money was Buchanan's, it is necessary to construe it quite as liberally as the complaint must be construed in order to hold that it contains a statement of facts sufficient to constitute a cause of action.

But the strict rule of the common law for the construction of pleadings is abrogated by the code. The rule now is, that, "in the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed with a view to substantial justice between the parties." Tay. Stats., 1443, § 23. It is also to be observed that this action was tried upon the hypothesis that the pleadings contain the allegations which it is now claimed they do not contain. The plaintiff was allowed to prove the contract of deposit, and the defendant was permitted to introduce much testimony tending to prove that the money deposited belonged to Mrs. Gardner and not to Buchanan, without any objection having been made thereto based upon the alleged defects in the pleadings. The objection that only a single issue, to wit, the genuineness of the indorsement, was made by the pleadings, seems to have been first made in the exceptions to the charge of the court; and the objection that the complaint does not state a cause of action does not appear to have been made in the circuit court, but was made for the first time in this court.

The rule is well settled, that a greater latitude of presumption may be indulged to sustain a complaint where the objection that it does not state a cause of action is taken for the first time at the trial, and after an issue of fact has been taken upon it by the answer, than where the same objection is taken by demurrer. We so held in *Tcetshorn v. Hull* [30 Wis., 162], decided at the present term. *White v. Spencer*, 14 N. Y., 247; *Cady v. Allen*, 22 Barb., 388; *St. John v. Northrup*, 23 id., 25. The rule applies to this complaint with increased force; and we perceive no good reason why, under the circumstances of this case as above stated, it is not applicable to the answer.

In the light of the foregoing rules of construction, it is not unreasonable to hold that the complaint states a cause of action, and that the answer denies that the money deposited belonged to Buchanan. But were it held otherwise, this would then be a case of variance between the pleadings and proofs

which misled neither party, and was therefore immaterial. In that case the circuit court properly directed the jury to find in accordance with the evidence, and might have ordered an immediate amendment of the defective pleadings without costs. Tay. Stats., 1445, §§ 35, 36. See also *Teetshorn v. Hull, supra; Gill v. Rice*, 13 Wis., 549; *Gardinier v. Kellogg*, 14 id., 605; *Trueman v. McCollum*, 20 id., 360.

It must therefore be held that the complaint states a cause of action, and that the answer denies that the money deposited with the defendant belonged to Buchanan. This disposes of the objections to the charge of the court based upon the proposition that the ownership of such money was not put in issue by the pleadings.

II. Beyond all question, there is sufficient evidence to sustain the verdict for the defendant, and the judgment cannot be disturbed unless there is material error in the rulings of the court on the trial upon objections to testimony, or in the charge of the court. Several exceptions were taken by the plaintiff to such rulings, and to various portions of the charge, and these will now be considered.

1. The defendant was allowed by the court to read in evidence to the jury the deposition of one William Moody, taken in Montreal at the instance and on behalf of the plaintiff, but not used by the plaintiff on the trial. The same was taken on commission, but no cross interrogatories were exhibited, and the defendant did not in any manner join in such commission.

It was held in *The Juneau Bank v. McSpedon*, 15 Wis., 629, that a deposition taken before a justice of the peace by stipulation may be read in evidence by the opposite party, if the party at whose instance the same was taken declines to read it. In that case the party using the deposition appeared before the justice and cross-examined the deponent, and it is argued that this fact distinguishes that case from the present one. We think otherwise. Circuit Court Rule 65 provides that, "in all cases where commissions have been issued and testimony taken

in accordance with these rules, the evidence may be read on the trial of the cause, or the hearing of any proceeding wherein they are taken, with the same effect as if the witnesses examined had been produced on the trial or hearing." This rule does not restrict the right to use the deposition to the party at whose instance it was taken. Had Moody, the deponent, been produced in court by the plaintiff, but not called by him as a witness, there is no doubt that the defendant might have called him to the stand and interrogated him as he was interrogated when he gave his deposition. The rule seems to substitute the deposition for and in the place of the deponent, and to give to either party the same right to use the deposition that he would have to call the deponent as a witness, were he personally in court. *Echols v. Staunton*, 3 West Va., 574, holds that, " it is as competent for one party to read on his own behalf a deposition regularly taken and filed by the other party, as it would be to introduce a witness summoned on behalf of such other party " (p. 578). In *Gordon v. Little*, 8 S. & R., 533, which case was cited by the learned counsel for the plaintiff, the right of a party to use a deposition taken at the instance of the opposite party is distinctly asserted, and the deposition offered under those circumstances was rejected only because a rule of court required the party seeking to use it to show that he had used diligence to procure the attendance of the witness, and he failed to show such diligence. The cases in Texas, cited on behalf of the plaintiff, were decided upon a statute peculiar to that state, and are not applicable here. The English cases cited hold differently, but whether upon general principles, or pursuant to some statute or rule of court, we are not advised. *Wilson v. Calvert*, 5 Simons, 194; *Smith v. Biggs*, id., 391. Our conclusion is, that the case of *The Juneau Bank v. McSpedon* was correctly decided, and that the principle of that case is applicable to the question under consideration, and determines it adversely to the plaintiff.

2. In his deposition, Moody narrated a certain conversation

between Wm. Gardner and himself, without being interrogated thereto. Before it was read, the plaintiff objected to so much of the deposition as relates to statements of Wm. Gardner. The objection was overruled, and the whole deposition was read, including certain letters from Buchanan to Moody, attached thereto as exhibits, the reading of which letters was also objected to by the plaintiff.

The statements made by Gardner to Moody were not competent evidence in the case for the defendant, and, not having been asked for by the plaintiff, should have been suppressed from the deposition. These statements related to the alleged gift of the money to Mrs. Gardner by Buchanan, and are substantially the same as the testimony of Gardner. They were made to Moody after Gardner understood that this action was to be brought, and there was nothing attending them which could serve in any degree to strengthen the testimony of Gardner. Under these circumstances we do not see how the plaintiff could have been prejudiced by the admission of the objectionable portion of the deposition; and if he was not prejudiced thereby, the error is immaterial, and will not work a reversal of the judgment.

The letters of Buchanan to Moody were competent evidence. They were attached to his deposition by Moody in answer to the general interrogatory, which is as follows: " Do you know any letter, matter or thing, touching the matter in question, that may tend to the benefit or advantage of the said plaintiff; if yea, declare the same fully and at large; as fully as if particularly interrogated thereto?" We have been referred to no case which holds that testimony material to the issue, given in answer to such general interrogatory, will be suppressed merely because it does not tend to the advantage of the party propounding the interrogatory; and we are not aware of the existence of any rule of law which requires that such testimony be excluded. Besides, we understand from the bill of exceptions that the original letters of Buchanan were attached

to the deposition ; and these, when offered by the defendant, were properly received as evidence independently of the deposition. It should be observed that these letters tend to show an intention by Buchanan to give the Hargrave notes and mortgage, or the proceeds thereof, to Mrs. Gardner.

3. After producing considerable testimony tending to show that the indorsement of the certificate of deposit is not in the handwriting of Mr. Buchanan, the plaintiff offered in evidence several writings purporting to have been signed, and which it was proved were signed by him. These papers were offered for the purpose of a comparison of handwriting, but were rejected by the court. It is claimed that this was error.

The question of the admissibility of documents for the purpose of comparison of hand writing in cases of disputed signatures was somewhat discussed in the case of *Pierce v. Northey*, 15 Wis., 9, and although not definitely decided, the court evidently favored the rule which prevails in England and in many of the states, that a comparison of hands by juxtaposition of two writings is wholly inadmissible, either as primary and sufficient or as corroborating evidence, except when the writings are of such antiquity that they cannot be proved in the ordinary way, or where the other writings, clearly proved, are already in the case and before the jury for some other purpose (p. 13). It is true that a different rule has been adopted in several other states, but we think the English rule is sustained by the stronger and better reasons, and ought to be adopted in this state. It is sufficient to refer to the opinion by the chief justice and the cases cited by him in *Pierce v. Northey*, without going into any extended discussion of the question here.

But it is argued that one of the writings offered, which was an assignment of the Hargrave mortgage by Buchanan to Mr. Smith, executed when the money in controversy was paid upon it, should have been received in evidence as tending to prove that when the same was executed Buchanan owned the Har-

grave mortgage. Such assignment would doubtless tend to
show that no *written* assignment of the mortgage had previous-
ly been executed by Buchanan; but in view of the fact that a
valid and complete transfer thereof and of the debt which it
was given to secure might have been made by Buchanan to
Mrs. Gardner merely by delivering the notes and mortgage to
her husband for her use, or to her personally, it is not easy to
perceive how the want of a written assignment to Mrs. Gardner
tends to show that she was not the owner of the securities.
The record title to the mortgage being in Buchanan, it was
natural and proper that he should execute the assignment, and
the fact that he did execute it does not necessarily tend to
prove that he owned the securities at the time. Besides, it is
not disputed that Buchanan owned the Hargrave notes and
mortgage when the same were executed, and the presumption
of law is that he continued to own them until it should be
made to appear that he had transferred them to some other
person.

4. The only remaining ruling upon the admissibility of tes-
timony that was much discussed in the argument, or which it
is necessary to consider, is the following : After the certificate
of deposit had been returned to the bank and paid, Mr. and
Mrs. Smith, both witnesses for the plaintiff, called at the bank
and had a conversation with Mr. Wheeler, its president, in re-
lation thereto. On her examination in chief, the following
question was put to Mrs. Smith: " Will you state what was
said by Mr. Wheeler, if anything, at that interview, in regard
to a deposit of money and whose it was?" An objection by
the defendant to such question was sustained by the court.
Was the ruling erroneous? The admissions or representations
of an agent, while engaged in any particular transaction for his
principal, made in regard to such transaction, may be received
as evidence against the principal in a controversy concerning
such transaction. But to be received they must constitute a
part of the *res gestæ* in the course of the agent's employment

about the matter in question; they must accompany the trans-action or the doing of the business, and must be within the scope of the delegated authority.

These rules are elementary, and an application of them to the question now under consideration impels to the conclusion that the offered testimony was properly rejected. 1 Greenl. on Ev., § 113 and cases there cited. The statements of Mr. Wheeler called for by the interrogatory related to a past trans-action, which had been closed by the payment of the certifi-cate, and cannot in any correct sense be said to be a part of the *res gestœ.* While Mr. Wheeler had the authority to receive the deposit and issue the certificate, and while his statements and representations made when transacting the business are binding upon the bank, he had no authority, after the certificate was paid, either by admissions or otherwise, to bind the bank to pay the amount of the certificate a second time to other parties. If that power exists, it is vested in the board of directors and not in the president of the bank.

The case of *Franklin Bank v. Steward*, 37 Maine, 519, will serve to illustrate the views here expressed. In that case a surety on a note to the bank, having in his possession prop-erty of the principal with which he might have secured himself by attachment, sent his agent, after the note became due, to in-quire of the bank whether it had been paid. To that inquiry, the cashier, in the banking room, declared that it had been paid; whereupon the surety, relying upon that information, surrendered the property to the principal, who soon afterward failed, became insolvent and continued so. In a suit by the bank against the surety on such note, it was held that the decla-ration made by the cashier was inadmissible as evidence against the bank.

The cases which recognize the same principles are very nu-merous, but no useful purpose will be accomplished by com-menting further upon, or even citing them. These principles are so well settled that it is quite unneccessary to do so.

Hazleton, Adm'r etc., vs. The Union Bank of Columbus.

III.    It only remains to consider whether there is any error in the charge of the court to the jury.

The court charged the jury in substance: 1. That if Walter Buchanan endorsed the certificate of deposit and delivered the same to Mrs. Gardner for her own use and benefit, such delivery was a valid gift to her of the money represented by the certificate, and in that case the plaintiff could not recover. 2. That although the jury should not find that Buchanan endorsed the certificate, yet if Buchanan sent the Hargrave notes and mortgage to Gardner pursuant to and in execution of a previous promise to give the proceeds thereof to Mrs. Gardner, this was a sufficient consummation of the gift to her of such proceeds, and would defeat the action. 3. That if neither of the above propositions is true, still if Buchanan delivered to Gardner, for his wife, the proceeds of the notes and mortgage, and for her own use and benefit, it was a valid gift thereof to her, and the defendant would be entitled to a verdict. 4. That if the money for which the certificate was given belonged to Buchanan, unless Buchanan endorsed the certificate, the plaintiff should recover. 5. That a promise to give is not a valid gift, and although Buchanan may have intended or even promised to give the money in controversy to Mrs. Gardner, if he failed to consumate such intention by placing the money beyond his own reach or control, no title thereto passed to Mrs. Gardner. 6. "The evidence to support a gift must be clear and satisfactory, and any mere promise or proposition of a gift or of voluntary assistance to Mrs. Gardner, to take effect at some future period, is utterly nugatory and void, as establishing a gift in fact."

The charge is quite lengthy, and some expressions contained in it may be justly liable to criticism, but it is believed that the foregoing is a fair statement of the substance thereof, and that the jury must necessarily have so understood it.    We think that the charge gives the law of the case correctly.

Conceding that the money deposited belonged to Buchanan,

Hazelton, Adm'r etc., vs. The Union Bank of Columbus.

if he actually endorsed the certificate of deposit and delivered it to Mrs. Gardner for her own use, it is entirely clear that the plaintiff cannot recover.    Again, if Buchanan endorsed the certificate and delivered it to Mrs. Gardner, although he did not give it to her but retained to himself the title thereto, still the bank paid it in strict accordance with the terms of the contract of deposit, and it seems equally clear that such payment discharged the bank from further liability on account of the money deposited.    These propositions do not seem to be controverted by the learned counsel for the plaintiff.

But, conceding that the money deposited belonged to Mrs. Gardner, and conceding also that the endorsement of the certificate is a forgery, we think that the same result follows. The certificate is, in its qualities and legal effect, the promissory note of the defendant for $2,500, payable on demand to the order of Buchanan. Until legally transferred, it was the property of the person whose money was deposited, and that person alone could maintain an action upon it.    So if it actually belonged to Mrs. Gardner, although payable to the order of Buchanan, he, in his lifetime, could not have maintained an action upon it, and, of course, the administration of his estate is in no better position.    Further, if Buchanan had no interest in the certificate, its legal effect is the same as though it were, in form, made payable to bearer.    In such case, for the purposes of this action, it becomes immaterial whether the endorsement of the certificate was made by Buchanan or whether the same is a forgery, for no endorsement was necessary in order to entitle Mrs. Gardner to withdraw the deposit.    *Coggill v. The American Exchange Bank*, 1 N. Y., 113, and cases cited.

A criticism is made upon the use of the word "*promised*" in the instructions, and it is said that there was no testimony tending to show that Buchanan ever *promised* the proceeds of the Hargrave securities to Mrs. Gardner.    It is perfectly apparent from the whole charge that the learned circuit judge employed the word in the sense of an "*expressed intention*," and, if so, it

is unobjectionable. Certainly the jury could not have been misled by the use of the word in the connection in which it was used. Further comment upon the instructions seems unnecessary.

It follows from the foregoing views that the judgment of the circuit court should be affirmed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied at the January term, 1873.