ZIMMERMAN and another vs. FAIRBANK.

*Evidence — Conversion — Reversal of Judgment.*

1. A witness, on cross examination, having testified that he had written certain letters, was not permitted to state their contents.  In the absence of proof of any effort to procure the letters themselves, *it seems*, that there was no error in ruling out secondary evidence of the contents.

2. If such ruling was erroneous, the error was *cured* by the subsequent introduction of the letters in evidence.

3. One of the plaintiffs having testified, on cross examination, that at a certain time plaintiffs employed one S. as their attorney-at-law in the matter of the chattels which are the subject of this action, was asked by defendant *why* he employed such attorney at that time, the question being put for the purpose of showing that S. was employed to collect plaintiffs' claim for said chattels, *not* from the defendant, but from one X.  *Held*, that as the question did not call for anything said or done by the plaintiffs, but only for a *motive* or *mental process*, it was properly ruled out.

4. The issue being, whether said chattels were delivered by plaintiffs *to defendant or to X.* (for sale on commission), the same witness was asked by defendant on cross examination, whether plaintiffs had at any time heard that X. had failed; but the question was ruled out. *Held*, that if the object was to discredit the witness by showing that

plaintiffs had a *motive* for seeking to hold defendant liable instead of X., perhaps it was within the *discretion* of the court to admit the question; but there was no error in rejecting it.

5. There was no error in permitting plaintiffs to put in evidence what purported to be an account stated between the parties, after testimony had been given tending to show that the items thereof had been separated from the original account by defendant's direction, and that the account offered was looked over and examined by him.

6. A witness for plaintiffs, on his direct examination, being asked *to whom* plaintiffs sold the chattels in question, replied that on a certain occasion (two years after said sale or delivery and a few months before this action was commenced), *plaintiffs told him* that they sold the property to the defendant. *Held*, that the testimony was not responsive to the question, and should have been rejected. But this court, being of opinion that such testimony could not have affected the minds of the jury, will not reverse the judgment for the error in admitting it.

7. The court rejected evidence offered by defendant to show that certain of the chattels in question had been sold by X. on credit, to persons who afterwards became insolvent and had not paid for the property, and that such sales were made in good faith, under a belief that the purchasers were pecuniarily responsible. The jury having found that the chattels in dispute were delivered by plaintiffs to the defendant (and not to X.) to be sold on commission, and that defendant refused, on demand, to account to plaintiffs for them, or denied his responsibility for them: *Held*, that the rejection of such evidence cannot be regarded as error. Defendant's liability for the property became fixed by his refusal to account for it on demand; and it was too late to offer to account therefor on the trial.

APPEAL from the Circuit Court for *Dodge* County.

The action is brought to recover damages for the conversion by the defendant, *David C. Fairbank*, of twenty-six lumber wagons, the property of the plaintiffs, which (it is alleged) had been delivered to the defendant to sell on commission. The answer, in addition to a general denial, avers that the wagons were delivered to one A. A. Fairbank to sell on commission, and not to the defendant; and that some part of the sum claimed by the plaintiffs had been trusted out, and had not been paid.

The testimony introduced by the plaintiffs tended to show

that the wagons were delivered pursuant to contract with the defendant, and him only, to sell the same for the plaintiffs for a stipulated commission; and the testimony on behalf of the defendant tended to show that the contract in question was between the plaintiffs and A. A. Fairbank, and that in making the same the defendant acted as the known and recognized agent of A. A. Fairbank.

The plaintiffs' testimony is further to the effect that the defendant has never accounted to them for the wagons, and that in the latter part of October, 1871, he refused to account therefor. The defendant does not controvert this testimony; but he testified on the trial that when the plaintiffs talked with him about the matter, he told them that he had nothing to do with it. The wagons were delivered in the summer and fall of 1869.

Several exceptions were taken to the rulings of the court admitting or rejecting testimony; and these are sufficiently stated in the opinion.

The court submitted to the jury the question whether the plaintiffs contracted with A. A. Fairbank or with the defendant, in respect to the sale of the wagons on commission; and instructed them that if they found that the contract was with the former, they must return a verdict for the defendant, but if they found that the contract was with the defendant, they must then find from the evidence whether there had been a conversion of the property by him. And on this subject the court charged the jury, that either a refusal to return the property or account for it, or the repudiation of the responsibility, may be a conversion. The jury were further instructed, that unless they found that the defendant was a party to the contract, and that he had converted the property to his own use, their verdict should be for him.

No exception was taken to the charge, and it is stated therein that the counsel for the respective parties substantially agreed upon the law of the case.

The plaintiffs had a verdict for the value of the wagons, less certain payments made by A. A. Fairbank and the stipulated commissions for selling the property ; and judgment was duly entered pursuant to the verdict ; from which judgment the defendant appealed.

*H. E. Connit*, with *A. Scott Sloan*, of counsel, for appellant.

*Ed. S. Bragg*, for respondent.

Lyon, J. No exceptions having been taken to the charge of the learned circuit judge to the jury, and there being testimony in the case sufficient to support the verdict, we have only to consider the rulings of the court during the progress of the trial, to which exceptions were taken on behalf of the defendant.

1. On his cross examination by the counsel for defendant, the plaintiff *Zimmerman* testified that he wrote certain letters to A. A. Fairbank ; and he was asked, in various forms, what he wrote, and whether he therein gave directions as to what should be done with the wagons. Objections to these questions were made and sustained. It would seem that the letters themselves were the best evidence of their contents, and that before the secondary evidence thereof could properly be given, some effort to procure the letters should have been shown. But whether this is true or not, the letters were afterwards produced, identified and read in evidence. This cured any error in the rejection of proof of their contents in the first instance.

2. The plaintiff *Zimmerman*, on his cross examination, further testified, that in June, 1872, the plaintiffs employed Mr. Seely as their attorney in the matter of the wagons; and he was thereupon asked the following question by counsel for the defendant: " Why did you employ him at that time ? " An objection was interposed on behalf of the plaintiffs, whereupon counsel for defendant stated to the court that he expected to show that Mr. Seely was so employed to collect the demand of A. A. Fairbank. The court sustained the objection.

The question does not call for a disclosure of anything said or done by the plaintiffs or either of them, but only for the motive which prompted the plaintiffs or the witness to employ Mr. Seely. It is an inquiry concerning a mental process, and we think the objection thereto was properly sustained.

3. The court also sustained an objection to the following question, put to the same witness by way of cross examination: " Did you at any time hear that Amos Fairbank had failed?" Amos Fairbank and A. A. Fairbank are one and the same person.

We are quite unable to perceive the materiality of the proposed testimony sought to be elicited by this question. The issue was, whether the wagons were delivered to the defendant or to Amos to be sold on commission; and we do not see how that issue could be affected, one way or the other, by the answer of the witness either in the affirmative or negative.

If the object of the question was to discredit the witness, by showing the existence of a motive for seeking to hold the defendant liable for the wagons instead of Amos, it was probably within the sound discretion of the court to admit or reject the testimony. Had the witness answered that he had heard that Amos had failed, it is not very apparent that the fact would tend to discredit him. We find no error in this ruling.

4. The plaintiffs were permitted to give in evidence what purported on its face to be an account stated between them and the defendant, concerning the wagons in controversy. This was preceded by testimony tending to show that the items thereof were separated from the original account by direction of the defendant, and that such account was looked over and examined by him. It was not offered as a book of account, but only as evidence of a settlement between the parties, or that the account in respect to the wagons had been stated by them.

For the purpose for which it was offered we think that it was properly received.

5. One A. D. Goddard, a witness called by plaintiffs, testified

on his direct examination (under objection), that the plaintiffs told him, on a certain occasion in the fall of 1871, that they sold the wagons to the defendant. The bill of exceptions shows that this testimony was given in reply to the question : " To whom did the plaintiffs sell the wagons ? " The answer was objected to generally, and the objection was overruled. The testimony is not responsive to the question, and ought to have been rejected. Yet it is not perceived that the defendant was or could have been injured by the ruling of the court. The objectionable testimony merely shows that the plaintiffs made a statement out of court, two years after the delivery of the wagons and a few months before this action was commenced, in harmony with their sworn statements made on the trial when testifying as witnesses. We do not think that the testimony of Goddard, as to what plaintiffs said to him, could possibly have strengthened their testimony with the jury. The error does not affect a substantial right of the defendant, and hence is insufficient to work a reversal of the judgment. R. S., ch. 125, sec. 40 (Tay. Stats., 1447, § 44). A similar question arose in *Hazleton v. The Union Bank of Columbus*, 32 Wis., 34, on nearly the same facts which exist in this case, and it was held that the error was not fatal to the judgment. There seems to be no difference in the principle involved in the two cases.

6. The defendant offered testimony to show that three of the wagons, which had been sold by A. A. Fairbank to one Sherwood, were sold on credit in good faith and in the honest belief that the latter was pecuniarily responsible, but that Sherwood subsequently became insolvent and unable to pay, and never paid for the wagons.* The court rejected the testimony.

Under the instructions of the court the jury must have found that the wagons were delivered to the defendant pursuant to a

---

* It appears from plaintiffs' evidence that they had authorized the sale of the wagons on credit. — REP.

contract made with him, and not with A. A. Fairbank, to sell the same on commission, and that the defendant refused, on demand, to account to the plaintiffs for the proceeds of the property, or denied his responsibility therefor. The testimony in relation to some of these propositions of fact is conflicting; but the jury have found that they were proved, and hence they have become verities in the case. It was, then, the duty of the defendant to render such account on demand, or within a reasonable time thereafter. His refusal to do so, accompanied by a denial that he had contracted with the plaintiffs in respect to the wagons, was very strong if not conclusive evidence of a conversion of the property. The offer of the proposed testimony concerning the sale to Sherwood and his subsequent insolvency, was nothing more than an attempt, on the trial, to account for a portion of the wagons. It was then too late. The liability of the defendant for all the property delivered to him under the contract was fixed by such demand and refusal, and by the commencement of this action several months later.

It is believed that the foregoing views dispose of all the questions presented for determination on this appeal. It follows that the judgment of the circuit court must be affirmed.

*By the Court.*—Judgment affirmed.

On a motion for a rehearing, appellant's counsel argued that the admission of Goddard's testimony as to what plaintiffs told him as to the person to whom they had sold the wagons in question, was well calculated to prejudice defendant's case with the jury, and the judgment ought to be reversed for that reason. The plaintiffs both testified that the wagons were delivered to defendant, and not to A. A. Fairbank; the two Fairbanks both testified to the contrary; and the main question for the jury was, which told the truth? To corroborate the testimony of the Fairbanks, letters from plaintiffs to Amos A. Fairbank were put in evidence, in which plaintiffs say: "We have learned by your brother *David* that you wanted another car

load of wagons." "Please send us some kind of a statement how many wagons you have sold." "We hope you will have good luck in selling them, and also in collecting." Goddard, as a witness for the plaintiffs, also testified that he was sent by them to Minnesota to Amos A. Fairbank, to get a statement from him of the wagons he had sold and the money he had collected on account thereof; and that he took with him as "credentials" a letter addressed to Amos, in these words: "Please give Mr. A. D. Goddard a statement of the business you have been *doing for us.*" Thus far Goddard's testimony strongly corroborated the defendant; but to break the force of this, and to strengthen plaintiffs' testimony, he was permitted to testify that when plaintiffs sent him to Minnesota, they told him that they had sold the wagons to defendant. It is clear that defendant's case "*may have been* injuriously affected" by the admission of this testimony, and that is sufficient reason for a reversal. *Barton v. Kane,* 17 Wis., 43; *Gillett v. Phelps,* 5 id., 437. The rule adopted in *Hazleton v. Union Bank,* 32 Wis., 34, is applicable only to those cases where the whole tenor and current of the evidence is in one direction, and where the admission of the objectionable evidence could not possibly change the result. 2. It is difficult to see any good grounds for rejecting the evidence offered by defendant to show that three of the wagons were sold to one Sherwood on credit, in good faith, and that Sherwood subsequently became insolvent, and had never paid for the wagons. Assuming that the wagons were really delivered to defendant and not to Amos A., there is no dispute that the latter was to have the selling of them; that there was authority to sell them on credit; that whatever was done by Amos was done with the knowledge and approval of plaintiffs; and that they were as much bound by his acts as they would have been by those of the defendant. If a loss occurred, therefore, in the course of the business, without fault of the defendant, plaintiffs must stand that loss. It is said that defendant's refusal to account was evidence of a con-

version, and that it was too late to attempt to account for a portion of the property after such demand and refusal. But it is submitted that a demand and refusal is merely *prima facie* evidence of a conversion, and may be explained or contradicted. *Boyle v. Roche*, 2 E. D. Smith, 336; *Lockwood v. Bull*, 1 Cow., 322. In this case, the moment it appeared that the wagons had in fact been disposed of precisely as the parties had agreed, the *prima facie* case was destroyed, and in the accounting between the parties the loss on the Sherwood wagons should have been allowed to defendant. Counsel further argued that under the proof the action could not be maintained at all; that the demand and refusal, to amount to proof of a conversion, must be accompanied by evidence that defendant had the actual possession and thus had the power to comply (*Andrews v. Shattuck*, 32 Barb., 396; *Whitney v. Slauson;* 30 id., 276; *Bowman v. Eaton*, 24 id., 528; *Kelsey v. Griswold*, 6 id., 436); that in this case there was no demand *of the property*, both parties knowing that it had been disposed of in accordance with the purpose for which it was delivered to defendant; that there was only a demand for an *accounting*, and this would not fix defendant's liability in an action as for a *conversion*, but only in *assumpsit* for money had and received, or an action on the case for wrongfully refusing to account.

The motion for a rehearing was denied at the June term, 1874.