## ROUNSAVELL vs. PEASE and another.

CONTRACTS. *(1) Agreement signed in blank; how it can become contract of the parties.*

EVIDENCE. *(2) Declarations of agent, when evidence against principal. (3) When admissible to impeach the agent. (4, 5) Error in admitting evidence cured by act of opposite party.*

1. Where the terms of a contract are agreed upon orally, and a paper is signed by both parties in blank, to be filled up by one of them, if he fills the blank with *other terms* than those agreed upon, it is not the contract of the parties, but such contract still remains oral.

2. Declarations of an agent concerning a transaction between another party and his principal acting by such agent, if made after the transaction was completed, are not admissible in evidence to show its real character.

3. But where the agent has testified in behalf of his principal, as to the character of such transaction, and, on cross examination, being asked (with proper specifications) whether he did not, after the transaction, make certain statements inconsistent with his testimony, answers in the negative, the opposite party may, for the purpose of impeaching him, introduce evidence of such statements.

4. Where, in an action by the principal, defendants were improperly permitted to introduce evidence of such declarations by the agent, but afterwards the agent was called as a general witness in plaintiff's behalf, and, after testifying to the facts of the transaction in question, denied that he had ever made the statements imputed to him: *Held*, that the error in admitting the impeaching evidence was *cured*.

5. If plaintiff desired to limit the effect of such evidence on defendant's part to the mere purpose of *impeachment*, he should have asked a proper instruction on that subject.

APPEAL from the Circuit Court for *Richland* County.

Action to recover the price of four sewing machines, which, it is alleged in the complaint, were sold and delivered by the plaintiff to the defendants. The answer was a general denial.

On the trial, defendants read in evidence an instrument, partly written and partly printed, signed by all of the parties, which purports to be a contract between them for the sale by the plaintiff and the purchase by the defendants of sewing machines, to be sold by the latter in a certain locality; the price to be paid therefor being a specified discount from Chi-

cago retail prices, and payments to be made in six months after purchase, with a larger discount if paid for on delivery. The instrument contains many other stipulations, not material to this appeal. The plaintiff read in evidence an order for the four machines in question, signed by the defendants. Defendants received these machines, but never sold them, and they notified the plaintiff, before this action was commenced, that they held them subject to his order.

The defendant who conducted the negotiations for his firm, testified, in substance, that he contracted with the agent of the plaintiff to receive the machines for sale on commission; that they did not purchase the machines; and that the agreement was that the plaintiff should take back all machines ordered by them, which remained unsold. He further testified that the plaintiff's agent applied to him to take the agency for the sale of the machines, at a time when he was about leaving his store to go out of town, and, being in haste to get away, for convenience, he signed the firm name to the printed blank contract (none of the blanks therein being then filled), with the agreement that the agent should insert therein the terms of the contract, and leave with the defendants' clerk a copy or duplicate of the contract. The agent filled up the blanks as they now appear, and the evidence tends to show that he left no copy of the instrument with such clerk, and that the defendants afterwards applied to the plaintiff, by letter, for such copy, but failed to obtain it.

The agent of the plaintiff testified that the instrument contains the terms of the contract made with the defendants; also that the contract was signed by the latter in blank. His language is: "We had a talk about what the agreement should be, and signed the contract in blank. The contract was filled out exactly according to agreement."

The rulings of the court on the trial are sufficiently stated in the opinion. The jury found for the defendants. A new trial was denied, and judgment entered for the defendants pursuant to the verdict; and plaintiff appealed from such judgment.

For the appellant, there was a brief by *Miner & Wulfing*, and oral argument by *J. H. Miner*.

For the respondents, the cause was submitted on the brief of *Eastlands* and *O. F. Black*.

Lyon, J.   The law of this case, as we understand it, was·so clearly and accurately stated by the learned circuit judge in his charge to the jury, that we can do no better than to adopt his language as a sufficient expression of our views.   The charge is as follows:

"First.  If the terms of an agreement for one to act as the agent of another, or purchaser of his goods, are verbally agreed upon, and a paper is signed in blank, to be filled up by one of the parties, it is incumbent upon him to fill up the paper in the exact terms talked of and agreed upon.  If, in filling up a blank, he inserts other terms than those verbally agreed upon, it is not the contract of the persons who signed it in blank.

"Second.  If one agree to the terms of a contract, and sign it in blank, and leave it with another to fill up, and it is filled up as verbally agreed to be done, he is bound by it.  It is a valid contract.

"Third.  If there was a misunderstanding between the parties relative to the terms of the contract, blanks remaining to be filled in by one of the parties in the absence of the other, and you are satisfied that it was the understanding of the defendant that he would be permitted to return the machines if not sold, and he has held the machines for the plaintiff, ready to be returned, and has offered to do so, it will afford a defense to this action.

"Fourth.  A written contract is never completed until entirely written, signed and delivered.   The contract in question was never executed until it had been filled up in full, just as the parties agreed that it should be filled up, over the signature of the defendants.  If the instrument had been filled up and delivered by *Pease* after its execution, it would have become such an instrument as could not be altered or varied

by verbal testimony. But, as it never was filled in *Pease's* presence, and by him delivered after it was completed, it remains an open question, whether it ever became the contract of the defendant."

It is only necessary to add that it is quite immaterial that the instrument in question, when signed, contained the skeleton of a contract of purchase and sale. It was not signed or delivered in that condition as a contract; and unless it was so filled up by the plaintiff's agent as to express the real agreement between the parties, it never became a contract. The case stands precisely as though the signature of the defendants' firm had been affixed to a blank sheet of paper. No matter what the agent may have written over that signature, unless he wrote what he was authorized to write there, in contemplation of law the sheet remains a blank. The jury must have found that the agent did not insert in the instrument the contract actually made and which alone he was authorized to write over the firm signature. Hence, it has become a verity in the case that the contract in respect to the machines has not been reduced to writing. It still rests in parol, and may be proved by parol testimony.

Had the defendants signed the instrument, in its present form, and had such signature been procured by false representations of the plaintiff's agent as to the contents of the paper (they being ignorant of its contents), under repeated decisions of this court, the instrument would be void. The cases which so hold are collected in *Hillsdale College v. Thomas*, 40 Wis., 661. The same principle applies here; for it is immaterial whether the fraud consists in misrepresenting the contents of the perfected instrument, as in those cases, or inserting, over the signature in blank of the parties sought to be charged, stipulations which they never made or authorized, as in the present case.

Numerous instructions were prayed on behalf of the plaintiff, which the court refused to give the jury. It is unnecessary to quote them at length. Some are in direct conflict

with the above views, and were properly refused. The balance of them seem to have been framed on the hypothesis that there was a written contract between the parties. They consist chiefly of statements of legal principles concerning the construction and effect of written agreements. But it is settled by the verdict that we have no written agreement to deal with. Hence the proposed instructions are immaterial for that reason. However, the jury were instructed that if the instrument was filled up as it was agreed that it should be, the defendants were bound by it.

The jury must have found, under the instructions, not only that the instrument in question does not contain the contract of the parties, but that the real contract was not that the defendants should purchase the machines, but that they should sell them for the plaintiff on commission — the plaintiff taking back those which remained unsold. There is abundant evidence to support the verdict, and on the merits of the case it should not be disturbed.

This disposes of all the errors assigned, with a single exception. A witness for the defendants was permitted, against plaintiff's objection, to testify that, after the contract in controversy was made, the plaintiff's agent came to the shop of the witness on the same day, and told him that he had given the defendants the sewing-machine business on commission. When the testimony was received, such agent had not testified in the case.

The declaration of the agent did not accompany the making of the contract, and constitutes no part of the *res gestæ*. The rule of law which excludes such testimony is thus stated in *Hazleton v. The Union Bank of Columbus*, 32 Wis., 34: "The admissions or representations of an agent while engaged in any particular transaction for his principal, made in regard to such transaction, may be received as evidence against the principal in a controversy concerning such transaction. But, to be received, they must constitute a part of the *res gestæ* in the course of the agent's employment about the matter in

question. They must accompany the transaction or the doing of the business, and must be within the scope of the delegated authority." (p. 48.)

Under this rule, the testimony was inadmissible; and because it may have affected the verdict, its admission would be fatal to the judgment, were it not for another circumstance which will now be noticed. After such testimony was received, the agent was called by the plaintiff, and testified that he made no such statement to the defendants' witness. Had the agent so testified before proof of his declarations was received, such proof would have been admissible, not as evidence in chief but as going to impeach the credibility of the agent's testimony. Hence, the question seems to be narrowed down to the mere order of proof, and that is a matter very largely in the discretion of the trial court.

There is a class of cases in which, when the plaintiff rested, a nonsuit should have been granted for want of sufficient evidence to support a judgment in his favor. Yet it has been uniformly held that, in any such case, if the defendant gives evidence which supplies the defect in the plaintiff's proofs, the refusal to nonsuit will not work a reversal of the judgment. *Barton v. Kane*, 17 Wis., 37, and cases cited in Vilas and Bryant's notes. No good reason is perceived why the same principle should not be applied here. In those cases the introduction of the requisite proof by the defendant after the improper refusal to nonsuit the plaintiff, cures the error and saves the judgment. Why does not the introduction by the defendant of evidence which would render the objectionable testimony competent, had it been afterwards offered, have the same effect? We think it has that effect, and that it is now too late to urge the improper admission of such testimony as error.

True, the testimony under consideration was admissible only as impeaching testimony; but if the plaintiff desired thus to restrict its operation, he should have prayed a proper instruction in that behalf.

*By the Court.* — The judgment of the circuit court is affirmed.