## McINDOE vs. CLARKE.

*February 2 — February 20, 1883.*

EVIDENCE. *(1) Transactions with deceased agent. (2) Declarations of agent.*

1. The testimony of a defendant that he had made a settlement of the matters in controversy with the plaintiff's agent, since deceased, is inadmissible under sec. 4070, R. S., and the fact that a deposition of such deceased agent, which had been taken on the part of the plaintiff to be used on the trial, has been put in evidence *by the defendant,* does not render the latter competent to testify as to his transactions with such agent referred to in the deposition.
2. Evidence of the declarations of an agent made after the completion of a contract negotiated by him, is inadmissible to show the terms of such contract.

APPEAL from the Circuit Court for *Marathon* County. The case is thus stated by Mr. Justice TAYLOR:

" The plaintiff brought her action to recover the amount claimed to be due to her upon two promissory notes made by the defendant and delivered to plaintiff, payable to her or her order. The execution and delivery of the notes are admitted by the answer. The answer then alleges by way of defense that the notes were given in payment for the purchase of a quantity of cedar timber for fence and telegraph posts; alleges that the plaintiff's agent, who made the sale of said timber to the defendant, made false representations as

to the quality of said timber, and that said timber was in fact worth one half less than it would have been had it been of the quality represented by her agent. It then alleges that there arose a controversy between the parties in regard to the quality of said timber and as to the terms of sale, and that after the giving of said notes, and in the spring of the year 1878, a settlement was made between the defendant and the agent of said plaintiff, by which it was agreed that said notes should be delivered up to said defendant and canceled, and that in consideration of such delivery and cancellation the defendant was to allow the plaintiff $1,200 for said notes, to be paid in sawing at the defendant's mill, in the city of Wausau, at the rate of $2.25 per thousand feet; that plaintiff was to furnish the defendant logs for such purpose the then coming sawing season, and until enough should be sawed to pay the said $1,200. The answer then alleges that the plaintiff furnished some logs under such agreement, and that the defendant sawed about sixty thousand feet in part execution thereof, and that the plaintiff neglected and refused to furnish any more logs to be sawed under said contract, and that the defendant has always been ready and willing to perform his agreement on his part. The defendant also sets up this alleged agreement between the parties and its breach by the plaintiff by way of counterclaim, and seeks to recover damages for a breach thereof on the part of the plaintiff.

" The evidence discloses that all the matters relating to the selling of the timber, the taking of the notes for the purchase price, and the subsequent arrangement, if any was made, for a settlement, and for the surrender of the notes and accepting $1,200 in sawing by the defendant for the plaintiff as a satisfaction of the claim, were transacted between the defendant and the husband of the plaintiff; the husband acting as her agent in regard to the matters, and having full power to make any contract in regard to the

same, and to bind her by such contract. It also appeared that at the time of the trial the husband and agent of the plaintiff was dead. The only real controversy on the trial was as to the alleged agreement to surrender the notes and accept in satisfaction thereof $1,200 in sawing, as set out in defendant's answer. There was also an attempt made on the part of the defendant to show misrepresentation on the part of the plaintiff's agent as to the quality of the timber sold, and for the purchase price of which the notes were given, not as a ground of defense to the plaintiff's action, but as a basis for the alleged settlement and compromise of the notes. The plaintiff recovered the amount due upon the face of the notes, with interest, less the amount of certain counterclaims for sawing and merchandise which were claimed by the defendant and not disputed by the plaintiff."

The defendant appealed from the judgment.

For the appellant there was a brief by *Silverthorn & Hurley*, and oral argument by *Mr. Hurley*.

For the respondent the cause was submitted on the brief of *Kellogg & Bardeen*.

TAYLOR, J. The appellant alleges as error the rulings of the learned circuit judge upon the trial, rejecting certain evidence offered on his part. The first exception was to the offer on the part of the appellant to prove by himself, as a witness in his own behalf, that he made a settlement with the respondent's agent, her husband, as set out in his answer. This evidence was rejected for the reason that such agent was dead.

It is very clear that this evidence was properly excluded. Sec. 4070, R. S. 1878, so far as applicable to the case at bar, reads as follows: " No party . . . shall be examined as a witness in respect to any transaction or communication by him personally with an agent of the adverse party, . . . when such agent is dead or insane, or otherwise legally in-

competent as a witness, unless the opposite party shall be first examined, or examine some witness in his behalf, in respect to some transaction or communication between such agent and such other party,  .  .  .  or unless the testimony of such agent, at any time taken, *be first read or given in evidence by the opposite party;* and then, in either case, respectively, only in respect to such transaction or communication of which testimony is so given, or to the matters to which such testimony relates." This offer was a plain offer to prove by the party defendant a transaction between himself and the agent of the plaintiff, such agent being then dead, and was properly rejected under the provisions of said section above quoted.

The defendant then offered in evidence on his part the deposition of the deceased agent, which had been theretofore taken on the part of the plaintiff to be used on the trial, and, after offering such deposition, he again renewed his offer to prove the contract of settlement as alleged in his answer. This offer was again rejected, and this is alleged as error. It is claimed that as the respondent had taken the deposition of her agent in his life-time to be used on the trial on her behalf, it should be considered as given in evidence by her upon the trial upon her part, although in fact offered in evidence by the appellant, and so the door would be opened for the defendant to give evidence in contradiction of the evidence of her agent. We do not think the statute capable of such construction. It is only when the testimony of the deceased agent is first read or given in evidence by the *opposite party*, that the door is opened for the opposing evidence of the other party to the action, in regard to the transactions or communications with the dead agent to which such testimony relates. The plaintiff cannot be supposed to have taken the evidence of her agent to be used on the trial for the purpose of aiding the defendant in his defense, but for the purpose of avoiding any defense

which the defendant might attempt to prove either by his own testimony or that of other witnesses. If the defendant offers such deposition on his own part, he so far makes the deceased agent his own witness, and cannot thereby remove his own disability as a witness in the case.

The following questions were put to D. L. Quaw, a witness on the part of the defendant: *Q.* "State what was said to you by Hugh McIndoe in regard to this controversy." *Q.* "State, if you recollect, about what was said, if anything, as to what amount he claimed of *Clarke* on this transaction, as near as you can recollect." These questions were objected to as calling for evidence which was incompetent and immaterial, and the witness was not permitted to answer. This ruling is alleged to be erroneous by the counsel for the appellant. We think the objections to the questions were well taken. The questions clearly called for the declarations of the plaintiff's agent as to a transaction with the defendant made, not at the time of the transaction, but at a time long subsequent to said transaction. The evidence sought was not in any way connected with the alleged settlement at the time it was made, was not a part of the *res gestœ*, but a naked proposition to put in the statement of the agent, made after the alleged agreement of settlement had been completed, for the purpose of showing what such agreement in fact was, and was clearly inadmissible. See *Hazleton v. Union Bank,* 32 Wis., 34; *Law v. Grant,* 37 Wis., 548; *Rounsavell v. Pease,* 45 Wis., 506; *Franklin Bank v. Stewart,* 37 Me., 519.

The defendant put the following question to the witness Parcher: *Q.* "Did you ever have any conversation with Hugh McIndoe in regard to a settlement made between him and *Clarke* in relation to a controversy arising out of cedar posts?" This was objected to and rejected. For the reason above stated, the evidence called for by this question was clearly inadmissible.

The following question was also put to the same witness: "Did you make an agreement with Mr. McIndoe by which you were to take a quantity of logs owned by you to the mill of *Mr. Clarke* to be sawed, and the saw bill, except seventy-five cents of it, to go to Mr. McIndoe?" The witness answered: "Yes, sir; a sort of an agreement." The same witness was then asked to state what that agreement was. This was objected to as calling for incompetent and inadmissible evidence, and the witness was not permitted to answer it. The appellant then offered to show by this witness "that the witness made an agreement with McIndoe, the agent of the plaintiff, by which the witness Parcher was to run a certain number of logs to the mill of *Mr. Clarke*, defendant, to be manufactured, and that the saw bill, except seventy-five cents per thousand, was to be paid to Mr. McIndoe upon the promissory notes mentioned in this action, and that in pursuance of that agreement Mr. Parcher did deliver a certain amount of logs to the mill of *Mr. Clarke*, which were sawed in pursuance of that agreement." This offer of evidence was rejected on the objection of the respondent, and the ruling was excepted to by the appellant, and its rejection is alleged as error.

This evidence, it is claimed, was competent on the part of the defendant, for the reason that the deposition of the plaintiff's agent, offered in evidence by the defendant, showed that he had, as agent of the plaintiff, agreed with defendant to take $1,200 in sawing from the defendant and surrender the notes. The contract, as testified to by the agent, was that if he could get Parcher to get his logs sawed at his place — that is, at defendant's mill — he would take the $1,200 in sawing and deliver up the notes. He further said: "I did agree to have sawing done in the amount of $1,200, upon the condition that Mr. Parcher would have his logs sawed there; otherwise, there was no such trade, as there were no other logs to be got to be sawed there, and I would

have to wait another year." He also testified that he " saw Parcher and could get no definite answer from him; saw him several times, and he would not get his logs sawed there on account of the reputation of *Clarke's* mill for bad sawing. I did not see *Clarke* after Parcher would not have his logs sawed there."

The testimony of the plaintiff's agent was the only evidence in the case which tended to show that any agreement had ever been made between the parties to surrender the notes on the payment of $1,200 in sawing; and his evidence · clearly states that the agreement, to have any effect, depended upon his ability to get Parcher to have enough of his logs sawed at defendant's mill in the season of 1878 to make the saw bill amount to the sum of $1,200. The offer of evidence by the defendant as above stated did not tend to prove the execution of the contract between the parties as testified to by the agent of the plaintiff, and as there was no other evidence in the case tending to show what the agreement for compromise between the parties was, the defendant was not prejudiced by the rejection of the offered evidence. If it was sought by the question put to the witness Parcher to draw from him statements made by the plaintiff's agent as to the nature of the contract made with the defendant as to the alleged compromise of the notes, then it was clearly inadmissible under the rule, above stated, that it is incompetent to prove by the declarations of an agent, made after the contract has been fully made and completed, what the terms of such contract are. This evidence was not offered for the purpose of establishing a counterclaim against the plaintiff for the value of the sawing done upon Parcher's logs. No counterclaim for such sawing was set up in the answer, and the learned counsel for the appellant do not claim that the offer was made for that purpose.

The exceptions taken on the trial to the instructions given by the learned circuit judge to the jury were not argued in

this court, and from an examination of them we think no erroneous instructions were given.

*By the Court.*— The judgment of the circuit court is affirmed.