*Nov. Term, 1861.*

ALLISON
v.
HUBBELL.

———————

ALLISON, PRESIDENT OF THE BANK OF GOSPORT *v.* HUBBELL.

Suit against the *Bank of Gosport,* a free bank organized under the law of 1855, upon a bill of exchange drawn by "*A. B.*, Pres.," and alleged to be the bill of said bank, of which the said *A. B.* was then and there president. The bill was indorsed by the drawee in blank, and also contained a subsequent special indorsement, which had been erased. Answer, in denial, with an agreement that all matters of defense might be given in evidence under it.

*Held,* that § 18 of the free bank law of 1855, (Acts 1855, p. 23,) which requires that the place where a bank is located, if not a county seat, shall contain not less than one thousand inhabitants, is probably merely directory, but if not, the defendant was not, in this case, in a position to make such a defense.

*Held,* also, that while it is the province and duty of the Court to construe statutes and interpret the language employed by the law makers, yet the object to be arrived at is the intention of such law makers ; which must be derived, if possible, from the act itself, or, from that when considered in connection with other statutes upon the same subject ; or, from those things together with cotemporaneous construction of, or usage under, said statute.

*Held,* also, that in carrying on the ordinary, or daily, business of banking, under said free banking law, such as drawing, indorsing, and accepting

Nov. Term,
1861.

ALLISON
v.
HUBBELL.

bills of exchange, giving certificates of deposit, &c., either the president or cashier is authorized to bind the institution, in the absence of any specified manner of transacting said business in the articles of association.

*Held*, also, that under the agreement to admit all defenses under the general denial, the assignment of the bill to the plaintiff was not admitted by the failure to deny it under oath.

*Held*, also, that a statement made voluntarily by a witness, and received over the objections, if properly presented, of the party who introduced the witness, in reference to matters which the opposite party could not, and the party introducing him did not, call out, should not be considered as legitimate evidence merely because it was given on the principal examination.

*Held*, also, that the evidence of the cashier that the drawing of the bill was a transaction not known to the books of the bank, was not sufficient to relieve the bank from the presumption arising from the face of the bill that it was the bill of the bank, as the president might have received the proceeds for the use of the bank and failed to pay them over.

*Held*, also, that as the blank indorsement of the payee of the bill was followed by a special indorsement to a person other than the plaintiff, and as this last indorsement, though erased, was necessary to support the protest, which was recited to have been made at the request of the last indorser, the possession of the bill after maturity by the plaintiff, he not being known in the chain of title before that time, nor as a holder, did not raise any presumption that he had acquired title before it became due.

*Wednesday,*
*February 5.*

APPEAL from the *Owen* Circuit Court.

HANNA, J.—*Hubbell*, assignee, sued *Allison*, representing the *Bank of Gosport*, on a bill of exchange, which, as given in evidence, was as follows:

"GOSPORT, INDIANA, *June* 19, 1858.

"Thirty-five days after date, pay to the order of *F. M. Jennings*, Esq., two thousand dollars.

"W. D. ALEXANDER, *Pres.*

"To D. K. COLBURN, Esq., 25 *William St., New York.*"

Indorsed "*F. M. Jennings*," and also an erased indorsement as follows: "Pay *G. I. Surrey*, Esq., Cash., or order, *P. V. Rogers*, Cash.;" also an acceptance thereon by said *Colburn*.

It is averred in the complaint that said *Alexander* was the president of said bank, and said bill of exchange the bill of said bank; that it was drawn and delivered to said *Jennings*, accepted by said *Colburn* and others, and then indorsed and delivered to the said plaintiff; that it was not

paid at maturity, but was protested, &c., and notice given to said bank, &c.

Answer, in denial, and an agreement of counsel filed that defendant might "give in evidence all matters of defense which might be proved under said denial, or under any other proper answer that might be pleaded herein; and that the plaintiff may give in evidence any matters proper to support the complaint or rebut the defense of the defendant which would be admissible under any proper reply."

The protest given in evidence shows it was made at the request of the *Metropolitan Bank*, and notices mailed to the *Bank of Gosport*, to *P. V. Rogers*, Cash., *Utica*, *N. Y.*, and to *Jennings*.

Trial by the Court, finding, and judgment for the plaintiff for the amount of the bill, &c.

It is insisted that this judgment should be reversed because: .

1. The village of *Gosport* had not one thousand inhabitants, nor was it a county seat.

2. The instrument sued upon was not the bill of the bank.

3. It was drawn by *Alexander* for the accommodation of *Colburn*; that the bank received no consideration therefor, and the plaintiff became the holder thereof after maturity.

The *Bank of Gosport* was organized under the general banking law of 1855, the second clause of the eighteenth section of which requires that the certificate, to be signed by the persons who may propose to associate, &c., shall designate the place where said bank is to be located, which, if not a county seat, shall contain not less than one thousand inhabitants. The certificate mentioned must designate the name, the location, the amount of capital stock, the names, &c., of the stockholders, and the time at which such association shall commence and terminate, and is to be acknowledged and recorded in the clerk's office and office of the Secretary of State. This certificate is declared to be *prima facie* evidence of the facts therein contained, and may be used as evidence for or against such association.

1. On the trial there was evidence tending to show that

*Gosport* had not at any time one thousand inhabitants; and, therefore, it is argued that the whole acts of said corporation were void.

We are rather of the opinion that the statute is merely directory to the governor, secretary and treasurer of State in their deliberations as to whether persons applying under said law had complied with the provisions thereof; § 2; but whether it is strictly so or not need not be decided in this case, for the defendant here does not stand in a condition to set up this defense. The question might arise in an application by the State to reclaim the franchises of the bank; and its effect would depend then, perhaps, upon how far the provision should be regarded as merely directory.

2. The twenty-third section of the act contains this clause: " Contracts made by such association, and all bills and notes by them issued and put in circulation as money, shall be signed by the president or vice-president, and cashier thereof." This provision is borrowed from the banking law of *New York*, or, at least, is identical in language with their statute, under which litigation has been had and decisions made. *Sandford* v. *Wyccoff*, 4 Hill, 444; *Barnes* v. *Ontario Bank*, &c., 19 N. Y. 152. The former decision, made in 1842, was dissented from by some of the ablest lawyers then members of said Court, but the conclusion of the majority controlled up to the latter decision in 1859, when the conclusion of the former Court was confirmed, or rather adhered to; to the effect, in that latter case, that a certificate of deposit signed by the cashier alone was binding upon the bank.

The difficulty in the interpretation of the statute arises out of the meaning which should be given to the word contracts as therein used, more than from any difference of opinion as to powers of agents or officers of corporations in instances where their duties are well defined by the charter or act of incorporation. See Angell and Ames on Corp., § 291. This authority lays down the doctrine that where the charter, &c. prescribes the mode of contracting, that mode must be observed, or the instrument no more creates a contract than if the body had never been incorporated.

Without doubt, drawing, &c. a bill of exchange, is an act which should be included within the operation of the statute, if the word "contract" is to receive its most extended signification. Indeed, it may be conceded that the Legislature intended to provide for all transactions properly embraced in the term "contracts," unless there is something in the act itself giving it a more limited signification. It is manifest that notes or bills of the bank, intended to circulate as money, promising to pay the bearer, would be included in the said term, "contracts," without being specially named, after the use of said word. If the said word was intended to have its most extended signification, why were "notes," &c. specially designated as being subject to the same mode of execution as they would have been under such general interpretation of the meaning of the term immediately preceding, if they had not been so named? If, in this statute, the words, "and all bills and notes by them issued and put in circulation as money," had been omitted, it appears to us, the intention of the Legislature would have been more readily arrived at, in this, that the word "contracts" would then have been construed in such manner as to give force and effect to its usual legal meaning: that is, if there had been, under such circumstances, any room for interpretation. But by the insertion, in the statute, of the language just quoted, doubt, to say the least, is thrown over the intention of the framers thereof, as to the particular class of contracts which they were desiring to guard by the signatures of named agents; for the rule of construction that requires a statute to be so expounded as, if practicable, to give effect to every part of it, *Com.* v. *Duane*, 1 Binn. 601; *Com.* v. *Alger*, 7 Cush. 53, 89, would be entirely disregarded by, in effect, treating the language just quoted as in fact having no force, or conveying no meaning. Such, it appears to us, would be the result of a construction of this section giving to the word "contracts" the meaning which, perhaps, should attach in the absence of any thing limiting or explaining it.

Although it is the province and duty of the Court to construe a statute, and interpret the language employed by the law makers, yet the object to be arrived at is a question

Nov. Term, of fact, namely, the intention of such law makers. That is
1861.      to be derived, if possible, from the act itself; or from that,
ALLISON    when considered in connection with other statutes upon the
v.         same subject, or from these things, together with cotempo-
HUBBELL.   raneous construction of, or usage under, said statute. All the
           Courts can do is to give effect to the will of the law makers,
           when clearly expressed, or thus ascertained, when clothed in
           doubtful language, or terms of ambiguous meaning.

    We are of opinion that the connection in which the word
"contracts" occurs, in said section, excludes any presump-
tion that might otherwise have arisen as to its including
certain contracts that it was contemplated such associations
might enter into. The trouble then arises, to determine the
particular contracts that should be excluded, and those that
should be included within the act. We are strengthened in
this conclusion by reference to the cotemporaneous con-
struction of the same, by those who have operated under
it—whatever weight, although it may be slight, the same
should have; and also by the usage that has prevailed in the
particular application thereof. Both the construction and
usage referred to have, in the absence of express provisions
in the articles of association, recognized the right of either
the president or cashier, usually the latter, to represent the
association by his signature alone, in the usual and ordinary
business of such institutions. We are not aware of any
legal construction having been placed upon the said statute,
in this State. That of the State of *New York*, we have already
adverted to. Under these circumstances we are, therefore,
of opinion, that in carrying on the ordinary—that which may
be termed daily—business of banking, such as drawing, in-
dorsing and accepting bills of exchange, giving certificates
of deposit, &c., either the president or cashier is authorized
to bind the institution, in the absence of any specified man-
ner of transacting said business, provided for in the articles
of association, under the twentieth section of said act. In
this instance the articles of association contained nothing
upon that point. It is not necessary for us in this case to
designate the particular contracts, or class of contracts, that
should receive the signature of the president and cashier

both. We only decide that this bill of exchange, as to that point, is binding on the bank, although having attached to it the signature of the president only.

3. It is treated, in appellee's brief, as a conceded point, that if the bill was executed without consideration, by the bank, and received by the plaintiff after it was over due, that the facts can be inquired into, &c.; but it is insisted that the evidence does not show that it was without consideration, nor that plaintiff received it after maturity.

The averment in the complaint would appear to place the indorsement to plaintiff at the time of the execution of the bill. This was denied, but not under oath, and, therefore, it is contended, was admitted, even if it had been necessary to plead under oath. 11 Ind. 148. The fact appears to have been forgotten that there was an agreement that proof might be made as to any fact that could be properly pleaded. It will not be contended but that a plea, or answer, might have been placed on the record, putting in issue said averment of the assignment. We think, therefore, under this agreement, the averment was not admitted by such answer not being filed.

The proof upon this point was partly furnished by the plaintiff. One *Sabin* testified to the presentation, by him, of said bill to the acting cashier of said bank, who refused to have anything to do with it, on the ground that the books of the bank did not show any transaction of the kind. The said cashier was afterward introduced by the defendant, and testified to the same facts, and that he was acting as cashier at the time said bill purported to have been drawn, and that the transaction was not known on the books of the bank. *Sabin* stated further, that he presented the bill to *Alexander*, the president of said bank, who told him that the bank had nothing to do with it; that it was an accommodation paper he had drawn for *Colburn* in *New York*, and that *Colburn* had given him a written obligation to protect it and take it up; that he showed to him *Colburn's* obligation in the same handwriting of the acceptance of the bill. The testimony in reference to *Alexander's* declarations and *Colburn's* obligation was objected to by the plaintiff, and its admission excepted

to.  It is now stated in argument that the defendant called it out upon cross-examination, although the record does not show that *Sabin* was cross-examined at all by said defendant.

We suppose that a statement, made voluntarily by a witness, and received over the objections, if properly presented, of the party who introduced such witness, in reference to matters which the opposite party could not, and the party introducing him did not, call out, should not be considered as legitimate evidence, merely because it was given upon the principal examination.  This conclusion would leave the question to be considered, whether the declarations of *Alexander*, if thus made, were competent evidence upon the question of the original consideration of the bill.

The declarations and admissions of an agent are often received to bind his principal, (Story on Agency, § § 134–141,) that is, to charge him.  But the question here is, how far they should be received to discharge such principal?  This is a material inquiry, because, from the face of the bill, the presumption would be that it was the bill of the bank, and for its benefit.  The evidence of the cashier, that it was a transaction not known on the books of the bank, is not sufficient to relieve that institution from the result of such presumption; for the president may have received the proceeds of the bill for the use of said bank, but failed to pay the same into its coffers: and yet the liability would attach for his act.  The bill of exceptions is so framed as to fail to inform us at what time objection was interposed to the statements of *Sabin*, as to the declarations of *Alexander*.  *Sabin* was the witness of the plaintiff, and, so far as we can see, a part at least of the statements of *Alexander* were called out by the said plaintiff.  We are not informed but that the whole declaration was received as a continuous conversation, and afterward objected to.  As the plaintiff could legally call out such declarations, and the ruling of the Court was against rejecting them, we must presume in favor of that ruling, that a sufficient reason existed for the same, until the contrary is made to appear.

It has been already stated that certain facts appeared from the protest of the notary, which was given in evidence by

the plaintiff. Neither from the indorsements on the bill, nor from any thing in the protest, made at the time it matured, nor from any evidence other than said bill, does it appear that the plaintiff was interested in it, up to the time of said protest. *Jennings'* indorsement was in blank, that is, not filled up; nor was there any proof when the plaintiff acquired an interest in, or obtained possession of, the bill. So far as the indorsements showed, the title passed from *Jennings* to *Rogers*, the cashier of some bank, and from him to the cashier of the *Metropolitan* Bank. The notices were regulated by this appearance. It is now argued and insisted that the bill passed directly from *Jennings* to the plaintiff, who passed it by mere delivery for collection, and that upon its non-payment it was returned to him. This theory is all very well, if we had any evidence of facts to sustain it. As before stated, there is none whatever. There is a presumption arising from his possession, after maturity, for *Sabin* testified that he received it from the plaintiff, through another person, for collection. Where the facts existing raise a presumption of a transfer, it would be that it was before the bill became due. Byles on Bills, 131, n.

In the case at bar the plaintiff showed, by his own evidence, that, at maturity, the bill was at least controlled, if not owned, by the *Metropolitan* Bank, and having shown, *prima facie*, a regular chain of title, by indorsements, from the payee to said bank, without any evidence that it passed through his hands, we are not able to perceive where a presumption should rest, in favor of the acquisition of title by the plaintiff, sufficient to overcome the *prima facie* case thus made out. It is true that the appellee insists that he did not plead, nor should the Court consider, the erased indorsements on the bill. But without these indorsements, there is nothing showing by what authority the *Metropolitan* Bank caused the protest of said bill to be made, and notices given. That protest has to be relied on to make out the case, to sustain the allegation that the bill had been protested for non-payment, &c. As the said indorsements appear to have been given in evidence for that purpose, they should be considered in reference to the point now under discussion.

Nov. Term,
1861.

We are of opinion that, under these circumstances, the possession of the bill, after maturity, by one not known in the chain of title before that time, nor as a holder, does not raise any presumption that he had acquired title before it became due; but to the reverse, excludes a mere presumption of that character.

*Per Curiam.* — The judgment is reversed, with costs. Cause remanded, &c.

*W. M. Franklin,* for the appellant.

*E. Dumont* and *O. B. Torbet,* for appellee.