CASE 48.—ACTION BY R. BOYD'S EXECUTOR AGAINST THE FIRST NATIONAL BANK OF WILLIAMSBURG, TO RECOVER INTEREST ON A DEPOSIT ON AN ALLEGED CONTRACT.—March 18.

# Boyd's Exr. v. First National Bank

Appeal from Whitley Circuit Court.

GEORGE P. JOHNSON, Special Judge.

From a judgment of dismissal plaintiff appeals.— Reversed.

1.  Banks and Banking—Interest on Deposit—Action to Recover —Evidence—Sufficiency.—In an action to recover interest on a bank deposit, evidence held to show that defendant bank's president agreed to pay interest.

2.  Evidence—Best Evidence—Bank Books.—A bank's books furnish better evidence as to whether a deposit was entered as a time deposit than the president's oral testimony.

3.  Banks and Banking—President's Power.—A bank president may be authorized by the directors to do anything within the authority of the bank's charter.

4.  Same—Agreement to Pay Interest on Deposit—Authority.—A bank is liable for interest on a deposit secured through the president's promise that interest would be paid thereon, where in making the promise he acted within the scope of his

authority, in the absence of proof that he was without such authority and that the depositor knew it when he deposited.

H. C. CLAY for appellant.

It is contended by appellee that in order to recover, appellant must show that the board of directors had by a resolution duly adopted, authorized the president to contract with Judge Boyd for interest on the deposit. The contention of appellant is that it was not necessary to show this, but having shown that Dr. Moss was president and acting as such, his authority to make this contract is presumed until the contrary is shown. This contract was not ultra vires but was one of the ordinary business transactions of the bank, and if it is true that no authority had been expressly given the president by the board of directors to make this agreement and no such implied authority is given by law, yet the bank is bound.

## AUTHORITIES.

Power of president to bind bank. (U. S. Rev. Stat., 5136; Merchants Bank v. State, 10 Wall., 604, 644; Peoples Bank v. National Bank, 101 U. S., 181; Stapylton v. Stockton, 91 Fed., 326, 331; United States National Bank v. First National Bank of Little Rock, 79 Fed., 296, 299; G. V. B. Min. Co. v. First National Bank of Hailey, 55 Fed., 23, 30; American Exchange National Bank v. Oregon Pottery Co., 55 Fed., 255; Carrigan v. Port Crescent Imp. Co., 34 Pac. Rep., 148; Kentucky Tobacco Association v. Ashley, 9 Ky. Law Rep., 110; L. & N. R. R. Co. v. The Literary Societies of St. Rose and St. Catherine, 91 Ky., 399; Burkhamp v. Healey, 72 S. W., 759.)

J. N. STEELY for appellee.

The authorities cited by appellant deal mostly with guaranteeing paper, and are foreign to the question involved. There is very little to be found in the decisions of the court affecting the issue involved in this case but Morse on Banks and Banking says: "The position of a president of a bank is one of dignity and indefinite general responsibility rather than any accurately known power, but except for the power of attending to the litigation of the bank, there is little or no absolute power invested in the president by reason of his office as president. (Morse on Banks and Manking, 4th Ed., sec. 143, 144.)

"The president unless specially empowered, cannot enter into

any contracts or agreements in behalf of the corporation, etc."
(Idem. sec. 144, subsec. D; Robertson v. Buffalo County Nat.
Bank, 58 S. W., 714; Mt. Sterling Turnpike Co. v. Looney, 1st
Met. 550.)

"No corporation can be bound by a contract made by its presi-
dent unless such power is given by the act of incorporation and
this must be shown." (Mt. Sterling & Jeffersonville Turnpike
Co. v. Looney, 1st Met., 550; 58 Ky. Which case has never been
overruled. (Caldwell's Notes, p. 1048.) "The cashier is the
proper officer to receive deposits and give certificates therefor."
(Morse on Banks and Banking, 161.)

### AUTHORITIES CITED.

Morse on Banks & Banking, 4 Ed., sec. 144, subsec. D; Robertson
v. Buffalo County National Bank, 58 N. W., 714; Mt. Sterling
Turnpike Co., v. Looney, 1 Met., 550; Mt. Sterling & Jeffersonville
Turnpike Co. v. Looney, 1 Met., 550 (58 Ky.); Caldwells Notes, p.
10-48; Morse on Banks & Banking, sec. 161; U. S. Nat. Bank v.
First Nat. Bank of Little Rock, 79 Fed Rep., 299, 300).

OPINION OF THE COURT BY JUDGE SETTLE—Revers-
ing.

This is an appeal from a judgment of the Whitley
circuit court dismissing appellant's action, wherein
he, as executor of the will of R. Boyd, deceased,
sought to recover of appellee interest on $4,000 depos-
ited with it by the latter April 9, 1904, under an
alleged contract with appellee that it would pay him
interest thereon at the rate of 2 per cent. per annum.
The total amount of interest claimed by appellant was
$209.49, and its payment was refused by appellee
March 20, 1907, at which time it paid to appellant,
upon his check as executor, $3,480.15, the balance of
the original $4,000 deposit then in its hands. Appel-
lee's answer admitted the deposit of $4,000 with it by
R. Boyd, deceased, but denied that it agreed to pay
interest thereon, and further denied that its president,
through whom appellant claimed it agreed to pay

interest, had authority from it to make such agreement, or that it was bound thereby. Trial by jury was waived by the parties, and the law and facts submitted to the court; the trial resulting, as above indicated, in a judgment for appellee. The circuit court refused appellant a new trial, and he now insists that the judgment should be reversed, upon the ground that it was contrary to law and flagrantly against the evidence.

We are of opinion that the evidence clearly established the promise and undertaking of appellee's president, E. S. Moss, that it would pay interest on the $4,000 deposited by R. Boyd, deceased, at the rate of 2 per cent. per annum. This agreement was shown by the letters of Moss to Boyd and the indorsements thereon in the handwriting of the latter. These letters were not successfully contradicted by the denials of Moss, or attempted to be contradicted by other evidence. The letters show that they were written about the time appellee began the banking business, and that Moss, its president, was appealing to Boyd, a stockholder in the bank to the amount of $2,000, to make a large deposit in aid of the new enterprise, and as an inducement to him to do so promised that appellee would pay him 2 per cent. interest on the deposit from the time it was received, and allow the withdrawal of the deposit whenever he saw fit to check it out. In the letter from Moss containing this offer it was stated that from three to six months was the usual time for receiving time deposits, but that this regulation would be waived in respect to Boyd's deposit, which might be withdrawn at any time. The letter contained, however, a request that Boyd make no mention of the arrangement proposed, which request was because others wishing to make time deposits, if informed of

the arrangement with Boyd, might demand the right to do so upon the same terms. The evidence further showed that Boyd, in order to comply with the request of appellee's president, withdrew from a bank at London, Ky., his place of residence, the $4,000 he deposited with appellee, and that the inducement for the change of deposit from the one bank to the other was the agreed undertaking of appellee, made through its president, to pay him the 2 per cent. interest on the amount deposited and permit its withdrawal when desired.

As a matter of fact no part of the amount deposited with appellee by Boyd was checked out within six months of the date of its deposit; but between November 4, 1904, and August 25, 1906, he checked on it for various sums, amounting in the aggregate to $519.49, and from the latter date until March 20, 1907, there remained in the bank of the original deposit $3,480.51. So no loss or hardship could have resulted to appellee if the judgment of the circuit court had compelled it to pay the interest demanded by appellant. If, as testified by appellee's president, Moss, the $4,000 received from Boyd was not entered upon the books of the bank as a time deposit, that fact could have been better and in a more competent manner shown by the introduction in evidence of the books themselves; but the books were not offered in evidence. We take it for granted, however, that they will show the $4,000 was not entered as a time deposit; for under the agreement between Boyd and appellee's president the money was not a time deposit, though one upon which appellee was to pay interest. Under the agreement in question the depositor could check it out at any time, but as long as the money, or any part of it, remained

in the bank, interest was to be paid on it at the rate of 2 per cent. per annum.

On the facts presented by the record little doubt can be entertained of the president's authority to enter into the agreement with Boyd referred to. We are aware that the active management of the monetary affairs of banks is ordinarily intrusted to the cashier. If the president receives only a nominal salary, and is expected to devote only a portion of his time to the business of the bank, he will not possess all the authority of the cashier. He may, however, be authorized by the directors to do anything within the authority of the bank's charter, and the modern tendency, and probably prevailing custom, in banking is to make the president the active manager, as well as the responsible head, of all the affairs of the bank, subject to the control of the directors; and because of the extraordinary responsibility thus placed upon them bank presidents are paid large and remunerative salaries. Owing to the diversity of opinion expressed by the courts of last resort of the several States as to the authority appertaining to the offices of president and cashier, it is sometimes difficult to determine their respective powers and duties. But the weight of modern authority seems to be that the acts of the president in the exercise of the following specific powers will be binding on the bank: In 5 Cyc. pp. 469-480, it is said: "The president can employ counsel and conduct the bank's litigation, borrow money, indorse and transfer the bank's paper, assign and foreclose a mortgage, take collateral security for a loan, receive a deposit and issue a certificate of deposit therefor, receive payment of money and other obligations due the bank, assign security to a public depositor to secure it, acknowledge a claim barred by the statute of limita-

tions, remit judgment in favor of a bank on a sufficient consideration, renew a debt, and offer a reward. It is not within the scope of his authority to make a compromise, except when he is specially authorized, or the general management of the bank is given up to him. Nor can he discount paper when this power is reserved by the directors, relieve the maker of a note or other debtors, authorize the payment of a check not drawn on proper funds, sell the bank's property, execute a mortgage on its real estate, pledge its property for the payment of a debt, stay the collection of an execution against the estate of a bank's debtor, waive the conditions of contract for the sale of land, certify to his own check, execute a conveyance of his bank's property for the benefit of its creditors when it has become insolvent, agree to pay a promoter for procuring stockholders, or release a subscriber.'' Savings Bank of Cincinnati v. Benton, 2 Metc. (Ky.), 240; Kilgore v. Buckley, 14 Conn., 362; Allison v. Hubbell, 17 Ind. 559; Hazelton v. Union Bank, 32 Wis. 34; Reno v. James, 16 Ky. Law Rep. 60; Parker v. Donnally, 4 W. Va. 648; Richard v. Osceola Bank, 79 Iowa 707, 45 N. W. 294; Morgan v. Merchants' Nat. Bank, 13 Lea (Tenn.) 234; U. S. National Bank v. First Nat. Bank, 79 Fed. 296, 24 C. C. A. 597.

In making the deposit in question upon the assurance of appellee's president that it would pay him interest thereon, R. Boyd had no reason to doubt the president's good faith or to question his authority to act for and bind the bank. The conduct of the president throughout the transaction was consistent with his duties as chief officer of the bank, and his acts within the apparent scope of the authority conferred by banks upon their presidents. We are of opinion, therefore, that appellee should be held liable to appel-

lant as executor for the interest claimed, because the deposit of the $4,000 was secured through the promise of its president that the interest would be paid by it, and also because its president, as its chief officer, had authority, general or implied, to secure the deposit for it by agreeing to pay interest thereon. In order to avoid the consequences of what, under the facts of this case, appears to have been an ordinary exercise of power by its president in a matter within the apparent scope of the authority and duties of his office, it was incumbent on appellee to show that he did not possess such authority, and that this was known by R. Boyd, deceased, at the time of making the deposit. No testimony, either in the form of a resolution adopted by its directors or otherwise, was introduced by appellee to show want of authority in its president to make the agreement relied on by appellant, and the circumstances were not such as to rebut the presumption that he possessed the power to make the contract obligating the bank to pay the interest claimed by appellant. The transaction between R. Boyd, deceased, and appellee's president was not ultra vires, but merely an ordinary, legitimate transaction, common to the business of banking, and such, we think, as could be conducted by the president in the usual course, without express authority from the directors. "Those dealing with a bank in good faith and in the usual course of business have a right to presume integrity on the part of its officers when acting within the apparent sphere of their duties, and the bank is bound accordingly." Merchants' Bank v. State Bank, 10 Wall (U. S.) 604, 19 L. Ed. 1008; People's Bank v. Nat. Bank, 101 U. S. 181, 25 L. Ed. 907.

Being convinced that the judgment appealed from is contrary to law and unauthorized by the evidence,

it is hereby reversed, and the cause remanded for a new trial and further proceedings consistent with this opinion.