### THE PEOPLE, PLAINTIFF AND RESPONDENT, *v.* GILLIES & WOODWARD, DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of San Juan, Section 2, in a prosecution for violation of section 553 of the Penal Code as amended by Act No. 131 of August 9, 1913.

No. 652.—Decided May 23, 1914.

FORMER JEOPARDY—AUTREFOIS ACQUIT—TRANSCRIPT OF RECORD—PRESUMPTION.— When the defendant pleads former jeopardy and *autrefois acquit* before the trial court, but does not include in the transcript on appeal a copy of the complaint or of the judgment of acquittal on which the plea is based, this court must presume, in the absence of proof to the contrary, that the lower court committed no error in overruling said plea.

BARBER SHOPS — COMMERCIAL AND INDUSTRIAL ESTABLISHMENTS. — Although a barber shop is not a commercial establishment, it may be considered as an industrial establishment in the broad sense frequently given to the word "industry."

ID.—INDUSTRIAL ESTABLISHMENTS—CONSTRUCTION OF LAW.—The provisions of section 553 of the Penal Code as amended by Act No. 131 of August 9, 1913, show that it was not the intention of the Legislature to give to the word "industry" the single meaning which it has in economic science, but a more general meaning in harmony with the ends of the said act, and that the purpose of the act was to include within its provisions places dedicated to lucrative purposes not expressly excepted, barber shops being included, therefore, in the penal law as industrial establishments in the broad sense of the term, or as places dedicated to labor for the purposes of profit or gain.

ID.—CONSTRUCTION OF LAW.—From the provisions of Act No. 134 of August 12, 1913, enacted by the same legislative assembly which passed Act No. 131 of August 9, 1913, amending section 553 of the Penal Code, it is inferred that the Legislature had no intention of giving to the word "industry" a different meaning in the two acts, and that inasmuch as barber shops were

included in the provisions of the former act it should be inferred also that they were included in the latter act.

The facts are stated in the opinion.

*Mr. Charles E. Foote, fiscal,* for The People.

*Mr. Damián Monserrat, Jr.,* for the appellants.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

On October 14, 1913, the *fiscal* of the District Court of San Juan, Section 2, filed therein an information which, in its pertinent part, reads as follows:

"The *fiscal* charges Gillies & Woodward with a violation of section 553 of the Penal Code as amended in 1913, a misdemeanor committed as follows: That on the evening of September 11, 1913, in the city of San Juan of the Judicial District of the same name, the said defendants, Gillies & Woodward, unlawfully and wilfully kept open a barber shop situated in the city of San Juan, after 7 p. m. and carried on the business thereof. This act is contrary to the law in such case made and provided and against the peace and dignity of The People of Porto Ric.."

A trial was had and on October 20 judgment was rendered sentencing the defendants, Gillies & Woodward, to pay a fine of $1 or, in default thereof, to undergo one day's imprisonment in jail, and to pay the costs.

The defendants appealed from the said judgment, which appeal is now before us for consideration and decision.

The appellants' attorney alleges as legal grounds in support of the appeal that the lower court erred: 1. In overruling defendants' plea of former jeopardy entered at the trial; 2. In overruling also the demurrer pleaded in the lower court that the information contains matter which, if true, would constitute a legal justification or excuse of the offense charged or other legal bar to the prosecution; 3. In overruling the demurrer also pleaded by the defendants that the acts charged do not constitute a crime; 4. In rendering a judgment contrary to law.

As to the first ground of appeal, it appears from the rec-
ord that the defendants, Gillies & Woodward, did plead before
the lower court that they had been in former jeopardy for
the same offense and had been acquitted by a judgment or
decision of the Municipal Court of San Juan rendered on
September 15, 1913, and that the said plea was overruled
after argument had been heard on both sides. The transcript
of the record contains neither the complaint, by virtue of
which the defendants were first placed in jeopardy for the
same offense, nor the judgment of acquittal of September 15,
1913, which would be evidence in support of the facts on which
the said plea was based. We have no basis upon which to
discuss the plea and, therefore, in the absence of evidence to
the contrary, must presume that the action of the lower court
in overruling the same was in accordance with law. *People
v. Burgos,* 17 P. R. R., 1112.

With regard to the second ground of appeal, the record
shows that the defendants also pleaded the demurrer pro-
vided for in subdivision 4 of section 153 of the Code of Crimi-
nal Procedure to the effect that the information contained
matter which, if true, would constitute a legal justification
or excuse in bar of the prosecution, alleging as a ground for
that plea the fact that they had been formerly in jeopardy
for, and acquitted of, the same offense. The information con-
tains nothing in bar of the prosecution, as a simple perusal
thereof will show, hence that plea cannot be sustained.

As regards the third ground of appeal, that the facts set
out in the information do not constitute an offense, the appel-
lants rely on the wording of section 553 of the Penal Code
as amended by Act No. 131 of August 9, 1913, on the ground
that the said amended section does not refer to barber shops,
which cannot be classified as commercial establishments nor,
as they allege, come under the category of industrial estab-
lishments.

Said section, as amended, reads as follows:

"Section 553.—That during the whole day on every Sunday and

from 12 m. on legal holidays, and from 6 p. m., on all working days, except Saturdays, and on Saturdays from 10 p. m. commercial and industrial establishments shall remain closed to the public and suspend all work for employees one hour after closing, excepting public markets for the sale of alimentary articles of prime necessity, sugar and alcohol factories, coffee cleaning mills, pharmacies, printeries, garages, bakeries, hotels, restaurants, eating houses, clubs, billiard rooms, ice houses, meat stalls, milk stands, dairy farms, slaughterhouses, livery stables, piers or docks, undertaking establishments, places where refreshments, sweets, manufactured tobacco, matches and periodicals only are sold, and cafés; excepting also public and quasi-public utilities and works of emergency necessary to prevent danger or considerable financial loss. Theatres, or other places devoted exclusively to amusements or charitable purposes, shall not be comprised under the provisions of this section, so far as relates to the purposes stated herein.

"Every violation of this section shall constitute a crime punishable by a fine of not to exceed fifty (50) dollars."

We understand that a barber shop is not a commercial establishment, but should it be regarded as an industrial establishment for the purposes of the section quoted? We think so. Let us consider the definitions which may be given to the word "industry."

"Industry is the result of operations whereby man changes and makes fit for his use materials which were unserviceable in their natural state, in which sense industry is the opposite of agriculture and commerce * * * Occupation or labor employed in agriculture, manufacturing, commerce or mechanical arts." *Diccionario Salvat,* vol. 5, p. 770.

"Economic science operates logically in limiting the meaning of the word *industry,* confining it exclusively to the skill of man as a direct producer of wealth and not to man as an active being generally or to man in the exercise of all his faculties * * * and in the infinite variety of its applications it is not rare that the word *industry* is used to designate the aggregate or result of human labor without distinction of kind * * *

"In order to avoid confusion and error the word *industry* is also given a meaning which is not admitted by economic science. In fact, this word is very frequently used as a synonym of *labor,* when,

in reality, these two words have clearly distinct meanings. By labor is understood the pure and simple exercise of the physical forces or the intellectual faculties of man. Hence, when the exercise of these forces or faculties is sufficient to produce wealth, it may be said indiscriminately that the man labors or that he conducts an industry.

"But this rarely occurs. Generally, in order to produce, not only is labor necessary, but also the combination with it of capital and all natural agencies. Production is, therefore, the result of a unity of combinations of which labor is only one of the elements. This *ensemble* is what is termed *industry*." *Diccionario Enciclopédico Hispano Americano de Literatura, Ciencia y Artes.* Montaner and Simón, Editors, Barcelona, vol. 10, p. 864.

"INDUSTRY.—Occupation or labor employed in agriculture, arts, manufactures, and commerce * * * The art, skill, and knowledge of a person in the practice of his profession or trade." 3 Escriche, *Diccionario de Legislación*, 220.

"INDUSTRY.—Productive labor; specifically, labor employed in manufacturing; manufacture; hence, a particular branch of work; a trade * * *." Century Dictionary Vol. IV, p. 3071.

In the case of *Terry* v. *McDaniel* (103 Tenn., 415; 46 L. R. A., 559), the Supreme Court of Tennessee said:

"A barber is a mechanic, and as such entitled to exemption from execution for his debts of a chair and mirror used in the prosecution of his trade."

We find, then, that according to economic science a barber shop is not an industrial establishment, but it may be so if the broader meaning frequently given to the word *industry* is accepted. Besides, if a barber is a mechanic we see no difficulty in admitting that he conducts a mechanical industry.

This being so, let us see what is the significance and scope of the words "industrial establishments," used in section 553 of the Penal Code as amended by Act No. 131 passed at the Extraordinary Session of 1913.

The very fact that the wording of the section quoted excepts hotels, restaurants, clubs, and billiard rooms from the provision that commercial and industrial establishments shall remain closed to the public during the days and hours speci-

fied therein, demonstrates that they were understood to come under that category and shows that it was not the intention of the Legislature to give to the word *industry* the only definition it has in economic science, but a broader meaning in harmony with the ends sought. The legislators understood that unless the exception were made, the general provision as to commercial and industrial establishments would include the establishments excepted.

Moreover, the said section provides that the closing clause shall not extend to theatres or other places devoted exclusively to amusements or charitable purposes, which places may remain open lawfully at all hours during Sundays and holidays, but only for said charitable purposes or for furnishing amusements. From that exception it may be gathered that places devoted to work and not to amusement and not to charity, but for gain, come within the general provision of the act unless they are included in the exceptions stated therein.

The wording and context of the act show that barber shops are comprised therein, if not as commercial establishments, then as industrial establishments in a broader sense, or as places devoted to labor for purposes of gain or profit.

Besides, the object of the statute quoted is to provide rest for the employees who earn their living by personal physical labor and at the same time to enable them to enjoy other advantages of a higher order which their status of intelligent and free beings entitle them to. That object affects those who follow the trade of barber.

Finally, during its Extraordinary Session of 1913 the Legislature passed another Act, No. 134, entitled "An Act to amend an act entitled 'An Act to establish a new system of industrial and commercial license taxes,' etc."

The first section of said Act No. 134 reads as follows:

"That on and after the first day of July, 1913, in addition to all other taxes now authorized by law, the Treasurer of Porto Rico shall levy and collect from every person, firm, association, partnership, corporation or other form of commercial or industrial organiza-

tion, and any branch or branches thereof, in accordance with the rates specified, the license taxes hereinafter enumerated  *  *  *."

Further on, or in section 12, barber shops are enumerated among those establishments required to pay industrial and commercial license taxes. As a barber shop of itself is not a person, firm, association, partnership or corporation it must be regarded as a kind of commercial or industrial organization or a branch thereof.

It is shown, then, that the same legislative assembly which passed the act whose violation has given rise to the present case also passed the Industrial and Commercial License Tax Act to which barber shops are subject although, according to economic science, they are not really industrial or commercial establishments, and it is logical to deduce that barber shops, while not commercial or industrial establishments, are subject to the provisions of the above-quoted section of the Penal Code. There is no reason for supposing that the Legislative Assembly intended to give one meaning to the word *industry* in the Closing Act and another in the License Act to which we have referred. See *Doe* v. *Avaline,* 8 Ind., 6, 15, and *Humphries* v. *Davis,* 100 Ind., 274, 284.

The facts alleged in the information constitute the public offense defined and penalized in section 553 of the Penal Code as amended by the Act of 1913 and this being so, the judgment appealed from conforms to law and the fourth ground of appeal is untenable.

For the foregoing reasons the judgment appealed from should be affirmed.

*Affirmed.*

Justices Wolf, del Toro and Aldrey concurred.

Mr. Justice Hutchison took no part in the decision of this case.