JAMES CATLIN v. THE MICHIGAN CENTRAL RAILROAD
COMPANY.

*Negligence—Impeaching testimony.*

1. On review of the testimony (see opinion), the Court held that the jury should have been instructed that there was no evidence that the alleged incompetency of defendant's fireman was the *proximate* cause of the injury complained of.

2. On the trial of a suit against a railroad company for injuries sustained in coupling cars by the alleged failure of defendant's fireman to obey a signal to "go ahead" given by the "helper," the helper admitted on cross-examination that he was at plaintiff's house the morning after the accident, and was then asked if he did not tell plaintiff's wife that he gave said signal, and that the fireman backed up the engine, and if, in answer to the question by plaintiff or his wife, "who the fireman was," he did not reply, "Some damned fool that Smart had put on there recently,"—all of which he denied; whereupon plaintiff's wife was allowed to testify that such a conversation took place.

   *Held*, that what the helper said the morning after the accident was not admissible as an admission binding the defendant, or as evidence of any fact stated in the conversation; and that the court erred in refusing to instruct the jury that the testimony of plaintiff's wife as to what was said could be considered *solely* for the purposes of impeachment.

Error to superior court of Detroit. (Chipman, J.) Argued May 5, 1887. Decided June 16, 1887.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Henry Russel* (*Ashley Pond,* of counsel), for appellant.

*Don M. Dickinson,* for plaintiff.

CHAMPLIN, J. In order to entitle the plaintiff to a recovery in this case it was incumbent upon him to prove that the defendant was negligent in employing an incompe-

tent person as a fireman, and in continuing him in its employment after it knew of his imcompetency; and, further, that the injury complained of resulted from the ignorance or incompetency of the fireman.

Counsel for defendant insist that there was no testimony tending to prove either of these facts, and that the learned judge erred in submitting the case to the jury for that reason. The testimony tending to show that defendant was negligent in employing the fireman who was upon the engine at the time of the injury to plaintiff, and that it retained him in its service after knowing that he was incompetent, depends almost entirely upon the testimony of the plaintiff given in his own behalf. It was flatly contradicted by other witnesses. The jury have passed upon the credibility of the witnesses, and must have found with the plaintiff upon this point.

The particular incompetency alleged was the ignorance of the fireman respecting the signals. The code of signals is printed in the instructions which are placed in the hands of employés for their guidance.

"The signal to go ahead is given by swinging the arm or lamp over the head in the direction the train is to move; to back, wave the lamp up and down; to move cautiously, by moving slowly the hand and arm down towards the track; to stop, by stretching the arm at right angles to the body, by waving it in a given course. The person giving the signal should be on the engineer's or right-hand side of the engine, unless the train is on a curve, in which case he should stand on the inside of the curve."

It is a part of the duty of the fireman to keep a lookout upon the left-hand side of the engine, and receive signals from the switchman, and communicate them to the engineer.

The plaintiff was employed by defendant as a switchman in its West Bay City yards. His duty consisted in making up trains as he received orders from the yardmaster. In performing this duty he has charge of the engine and train, and

the engineer is subject to his or ders.  He gives the signals
when to back up or go ahead, and in fact controls all the
movements of the engine by signals.  The signal to move
cautiously backward is called the "slack back" signal, and
is made by moving the hand or latern slowly downwards and
upwards; while the signal to "back up" is given by a quick
movement in the same directions.

On the night of January 16, 1882, plaintiff was engaged in
switching cars in West Bay City.  He had under his charge
a switching engine, upon which was a front and rear head-
light,—the latter affixed to the top of the cab,—an engineer
and fireman and a helper.  He had performed some work,
and upon the occasion in which he was injured he was
engaged in coupling together two cars laden with saw-logs
which projected beyond the cars a short distance.  The cars
were located upon a switch called No. 2, which led from the
main track, between the slips, to the Saginaw river.  There
were 14 cars standing on this switch track, the rear one being
a box car, and the others flat cars laden with saw-logs.  The
engine, tender, and three cars laden with logs were being
backed down to be coupled with the 14 cars, and then the
train was to be pushed back between the slips, where the
saw-logs were to be unloaded into the water.  After leaving
the switch, and proceeding towards the slip, the track of No.
2 curves to the right, and the car to which the coupling was
to be made stood upon this curve.  The helper had gone for-
ward, and stationed himself at the break upon the box car at
the rear of the train.  The plaintiff threw the switch where
No. 2 leaves the main track, and then proceeded along on
the outside of the curve, the engine and three cars following,
and before he reached the cars standing on the track he
passed across to the inside of the curve.

To this point there is no dispute in the testimony.  The
plaintiff testifies that he gave the signal for the train to stop,
and it did stop; that he then stepped in and adjusted the

pin, and stepped out and gave the signal to "slack back;" that the cars began to move, and he stepped in to make the coupling; that, instead of slacking back, the train backed up, and he was for that reason caught between the ends of the logs, and so crushed that he became unconscious; that he threw his lantern out upon the ground, which his helper saw, and gave the signal to go ahead, but instead of going ahead the train again backed up, crushing him between the logs, and causing him severe and permanent injury.

The engineer and fireman both testified that they were backing slowly, and looking for signals from the plaintiff. The engineer says he could see and did see the plaintiff on the inside of the curve, and both he and the fireman say that they received no signal to stop or to slack back, and did not stop until the cars met. The fireman testifies that he did not receive a signal from plaintiff after leaving the switch, and did not communicate any signal to the engineer after that time, and the engineer testifies to the same. The helper testifies that he heard some one cry out, "Oh!" and he looked, but did not see the switchman. He ran to the forward end of the box car, and descended the ladder to the ground on the right-hand side of the car, and then ran along, and saw plaintiff was caught between the logs, and gave the signal to the engineer to slack ahead.

Granting that the plaintiff gave the signal to stop, and afterwards to slack back, as he says he did, does this testimony tend to establish the fact that the fireman received his signal, and, through his incompetency and ignorance of the signals, told the engineer to back up? The plaintiff must establish these facts, or he cannot recover. Plaintiff does not testify, and indeed he could not, that, although he gave the signal properly, the fireman saw it, and communicated to the engineer the wrong interpretation. The most that can be claimed from his testimony is that a presumption arises from the facts that he gave the signal upon the fireman's

side of the cab, and the duty of the fireman to receive signals upon that side and communicate them to the engineer; and the fact that the engineer backed up instead of slacking back raises a presumption that the fireman did communicate to the engineer the wrong signal, and the still further presumption that it was done through incompetency, and not through negligence or carelessness, and also the further presumption that the engineer was not negligent or careless in opening the valve too far, but performed correctly and properly the order received through the fireman.

If the plaintiff's case rested upon this testimony and these presumptions, it is apparent that it was extremely weak, and it is quite uncertain whether it so connected the alleged fault with the injury as the result of the claimed incompetency as to justify the court in submitting the question to the jury. But it is unnecessary to determine this, as further testimony introduced by the plaintiff removes the doubt, and overthrows conclusively the presumptions which might by possibility have arisen from the plaintiff's testimony. He produced the engineer as his own witness, who testified positively that he received no instructions to back up from the fireman after passing the switch. There is no room for presumptions or inference in the face of this testimony. No question is made concerning the credibility of this witness, and his testimony disposes of the theory that the injury was caused by the incompetency of the fireman. He is also corroborated by the fireman, and there is no evidence in the case that contradicts his statements upon this point.

Plaintiff's counsel calls attention to the evidence of the engineer that the fireman told him to back up, and he argues that this was told him at the time when plaintiff signaled him to slack back. But it appears plainly from the testimony that this was said when the engine was on the main track, and plaintiff threw the switch to No. 2 track, and gave the signal there to back up.

Upon this record we think that the defendant was entitled to have his tenth request given to the jury, viz. :

"There is no evidence that the alleged incompetency of the fireman Johndro was the proximate cause of the injury."

When we consider the testimony of the plaintiff, we cannot well see how the plaintiff could avoid serious injury in making the coupling, whatever care or caution was used in backing the cars. It appears that the plaintiff was a man of robust stature, about six feet in height, and weighing, a day or two before the accident, 210 pounds. He testified as follows:

"'Three cars were attached to the engine. They were all loaded with logs. The last car, the nearest one to me, which was the third from the engine, was loaded with pine logs, each about two or three feet in diameter. This rear car, the nearest to me, was not fully loaded, but the base of it was covered with logs, and on all cars projecting probably about a foot, or a foot and a half to two feet, beyond the end of the car, and about even with the draw-bar. There were logs also on the car back of me, to which I was to couple. In coupling the cars, the ends of the logs would be about five inches apart. Just as the cars came together, the ends of the logs would be about five inches apart after the cars were coupled and pulling apart, but would bump together as the cars came together."

From this it would appear that it would be an impossibility for a person to stand between the cars to make the coupling without being caught between the projecting ends of the logs; and if the logs would bump together, as he states, it is remarkable that he did not meet with instant death at the time of the accident. There is no allegation of negligence respecting the manner of loading these cars, nor that plaintiff was ignorant of the perilous undertaking of coupling the cars thus loaded.

The witness Ream was the helper on the night of the accident. He was asked on cross-examination whether or not he was at plaintiff's the day after the accident, which he ad-

mitted. He was then asked if he did not tell Mrs. Catlin, on the morning after the accident, that he gave the signal to the fireman of the engine to go ahead, and that he backed up, and if Mrs. Catlin or Catlin replied, and asked him who the fireman was, and if he did not reply, "Some damned fool that Smart had put on there, recently,"—all of which he denied. Afterwards Mrs. Catlin was produced as a witness, and was asked to state what Ream said. This was objected to as irrelevant, and not proper rebuttal. Counsel for plaintiff claimed it as impeaching testimony, and the judge admitted it. She then testified substantially to the conversation as embodied in the question to him.

Respecting this testimony, counsel for defendant requested the court to instruct the jury as follows:

"The conversations testified by the witness Melissa Catlin to have been had with her by the witness Ream, which conversations said Ream denies having had, tend only to impeach the witness Ream, and can have no other or further effect. Statements made by said Ream to the said witness can have no tendency to prove any fact in issue in this cause."

The court refused this request, and did not cover the point in his charge.

The instruction should have been given. What Ream said the morning after the accident was not admissible as evidence against defendant, either as an admission binding the defendant, or as evidence of any fact stated in the conversation. Unless the attention of the jury was directed to this point, and cautioned to regard the testimony as bearing only upon the credibility of the witness Ream, they would quite naturally consider such testimony as evidence tending to prove the incompetency of the fireman, and the injury as resulting therefrom.

We think, also, that the testimony of the plaintiff as to the happening of the accident is as consistent with the theory of the negligence of the engineer as of the incompetency of

the fireman; and, while we do not decide the case upon this ground, it is evident that no recovery can be had unless this element of uncertainty is eliminated by a preponderance of proof. that the incompetency of the fireman was the proximate cause of the injury.

The judgment must be reversed, and a new trial ordered.

CAMPBELL, C. J., and SHERWOOD, J., concurred.

MORSE, J. I concur in granting a new trial.