VAN ALSTINE v. KANIECKI.

1. TRIAL—REMARKS OF COUNSEL—INSTRUCTIONS.

Statements of counsel not sworn as witnesses, to the effect that, from their acquaintance with one of the adverse witnesses, they believe certain things concerning his character, which, if true, would tend to discredit his testimony, are properly pointed out by the court, in his instructions to the jury, as being without weight in the case.

2. INTOXICATING LIQUORS—CIVIL-DAMAGE LAW—MEDICAL ATTEND-
. ANCE.

It is not error to instruct the jury, in an action under the civil-damage law for the illegal sale of liquor to plaintiff's son, who was injured by reason of his intoxication, that plaintiff cannot recover for any medical assistance furnished the son, where no proof has been made as to the doctor's bills, the amount thereof, or who incurred liability therefor.

3. SAME—EVIDENCE—HEARSAY.

In such case, evidence of statements made by the son, to the effect that he did not procure liquor from the defendant, is inadmissible, as hearsay, except for the purpose of impeaching the son as a witness.

4. SAME—RES GESTÆ.

The fact that such statements were made immediately after the injury to the son does not bring the case within the rule that "declarations regarding personal injuries are admissible as part of the res gestæ when there is a concurrence in point of time between the act and the declaration," since the testimony does not relate to the injury itself.

Error to Alpena; Kelley, J. Submitted April 9, 1896. Decided May 19, 1896.

Case by Marilla Van Alstine against Philip Kaniecki, a saloonist, and Patrick Culligan and Dennis J. Roach, his bondsmen, under the civil-damage act. From a judgment for defendants, plaintiff brings error. Reversed.

*Joseph Cavanagh* (*J. D. Turnbull*, of counsel), for appellant.

*James McNamara* (*W. E. Depew*, of counsel), for appellees.

MOORE, J.  Plaintiff brought suit against Kaniecki, a saloon keeper, and his bondsmen, under the provisions of Act No. 313 of the Public Acts of 1887.

Her declaration, in substance, was that defendant Kaniecki was in the saloon business, and the other defendants are his bondsmen; that Kaniecki sold to her son Lambert, who was intoxicated, and in the habit of getting intoxicated, intoxicating liquors, which he drank, and which increased his intoxication, and, while thus intoxicated, her son, on account of his intoxication, was unable to control his team, and they ran away, throwing him from his wagon, and permanently and greatly injuring him; that, at the time of the injury, plaintiff and her son were living together as one family, and her son was maintaining and supporting her, and would have done so the balance of her life; "that by means of said unlawful acts of defendants, and by said injury, she has been obliged, and will be obliged in the future, to expend large sums of money in doctoring, nursing, and maintaining her said son, and, by means of said illegal acts of defendants, she has been injured in her person, property, and means of support to her damage of $5,000."

The defendants admitted that Kaniecki was keeping a saloon, and that the other defendants were his bondsmen, and that Lambert was at his saloon on this night, but denied that he was then drunk, or that he got any liquor whatsoever from Kaniecki upon this occasion, and produced evidence tending to prove this.

The jury rendered a verdict for the defendants.  Several errors are assigned.

The court, in his charge to the jury, used this language:

"Now, I am asked to say to you, and I do say to you, gentlemen, in reference to a criticism made to the testi-

mony of Le Vere, that he was a traveling dentist, or one who pursued dentistry in some of its branches, about the country, that this fact alone is no reason that you should discredit his testimony. Unless you find something more than that, the mere occupation of a man would be no reason for you to discredit his testimony. And I call your attention to the statement of counsel in this case as to this witness, that, from his acquaintance with him, he would be just such a man as would be likely to be sought after, and one that would make untruthful statements. The statement ought not to weigh in this case."

This is alleged as error. We do not so regard it. If counsel had any statement to make to the jury relating to his acquaintance with the witness, he should have been sworn, and subjected himself to the rules of examination. In this connection, we desire to express our disapproval of the language used by counsel for the plaintiff in their briefs, filed in this court, when referring to witnesses in the case. Expressions found on pages 9 and 10 of plaintiff's brief, and page 7 of the supplemental brief, do not serve any good purpose, and should be severely criticised.

The trial judge instructed the jury that plaintiff could not recover for any medical assistance furnished her son. This is said to be error, citing *Clinton* v. *Laning*, 61 Mich. 360, and *Thomas* v. *Dansby*, 74 Mich. 403. The claim of the plaintiff is that her son lived with her, and supported her. We do not find from the record any proof as to the doctor's bills, the amount thereof, or who incurred liability therefor, and for that reason the assignment of error is not sustained.

Dr. Eakins was called as a witness for the plaintiff, and testified to his arrival on the scene soon after young Van Alstine was hurt, and to his condition, and the extent of his injuries. On cross-examination the following occurred:

"*Q.* Was there anything said by Van Alstine as to whether he had been drinking or not?

"*A.* Some person asked him, made the remark, 'Where did you get your whisky?'—something to that effect, I

don't exactly remember what; and he said that he had some altercation with some one down town, and he got full, or something to that effect. And some person said to him, 'Why, we saw you start away with your horses on the run from this saloon, Kaniecki's saloon.' Well, he said he went in there to get a drink, but—

"*Mr. Turnbull:* I object to any of this testimony at all. It has gone as far as it ought to have gone.

"*Attorney for Defendant:* Let's see what it is. You don't know what it is.

"*The Court:* A statement of the injured man?

"*Attorney for Plaintiff:* Yes; a statement of the injured man.

"*The Court:* As to where he got his liquor?

"*Attorney for Plaintiff:* Yes.

"*The Court:* Why isn't it competent?

"*Attorney for Plaintiff:* If they wanted to impeach this man, they should have asked him the question when they examined him.

"*The Court:* They possibly— His deposition was taken and used in this case?

"*Attorney for Plaintiff:* His deposition is here; yes. Now, then, they had a chance, if they wanted to ask him any questions—

"*The Court:* You may take the answer.

"*Mr. Turnbull:* An exception.

"*A.* Well, he said that this Kaniecki told him that 'no, he couldn't have any liquor; that he was drunk now.' And the statement was corroborated by Cronk, who was then standing by his feet.

"*Mr. Turnbull:* I move to strike that out.

"*The Court:* That is not proper. Strike it out. He is only asking what the man said.

"*Attorney for Defendant:* Strike out so far as what Cronk said—

"*The Court:* Strike out his statement as to Cronk's statement."

The witness further testified that Van Alstine said that he did not get any liquor at Kaniecki's; that he went there for the purpose of getting some; that Kaniecki would not give it to him; that he said he was "drunk now."

"The plaintiff's counsel then made a motion to strike out the evidence of Dr. Eakins as to what Lambert Van Alstine said about not getting any liquor from the defendant Kaniecki that evening, for the reason that this evidence was only impeaching evidence, and, if it was not done, it would force plaintiff to bring Lambert in his critical condition to deny it.    Motion overruled, and counsel for plaintiff excepts."

This is alleged as error, as being hearsay, and not proper original testimony.

No foundation had been laid for this testimony as impeaching testimony.    Young Van Alstine had not at this time been sworn.    His deposition had been taken, but his attention was not called in the deposition as to whether he had made the statements testified to by Dr. Eakins.    It is urged by counsel for appellees in their supplemental brief that this testimony was competent as impeaching testimony, inasmuch as young Van Alstine was afterwards called, and contradicted it.    It is urged that its admission simply relates to the order of proof, and that the case ought not to be reversed because of its admission; citing *Rounsavell* v. *Pease*, 45 Wis. 506, and *Roux* v. *Lumber Co.*, 94 Mich. 607.    These cases would control had this testimony been offered simply as impeaching testimony. An inspection of the record shows it was not offered or received as impeaching testimony, but as an admission which bound the plaintiff because of her relations to the witness who made the statements.    It was so treated by the court and counsel when admitted, and in the motion for a new trial, and in the original briefs in the case. The jury must have understood from the way the testimony was treated that it was received as being in the nature of an admission which would bind the plaintiff. In referring to this testimony in his charge, the trial judge made use of the following language:

" Now, there have been witnesses upon the stand here who have testified to statements made by the injured man

soon after it was made; and I say to you, you have a right to consider that testimony. I refer now to the testimony of the two doctors, as to the statements that he made, the young man made, while in front of McSorley's store, that he had received nothing to drink at Kaniecki's, the defendant's. You have a right to consider it with all the other evidence and all the surroundings in this case. You have a right to weigh it in the light of the probabilities of such statements being made at the time. You have a right to weigh and determine whether it strikes you, and meets your minds and consciences, as being probable and true, and, if you believe it, you have a right to act upon it; and I say to you here, if you find that such statements were made by the young man, under conditions when he was fairly in possession of his faculties, and knew what he was saying, it would be a circumstance strongly against him in this case, or the claim put forward here that he did purchase liquor there, because men are never supposed to make statements, when they are deliberately made, directly in opposition and opposed to their own interest."

The test, then, should be whether this testimony could be received for any other purpose than impeaching testimony. Whatever right to sue in this action the plaintiff has is by virtue of 3 How. Stat. § 2283e3. The right is personal to her. Young Van Alstine could not himself sue. *Brooks* v. *Cook*, 44 Mich. 618. The plaintiff's right of action depended upon the facts, and belonged to herself, and was not derived from her son, though growing out of his acts. *Kehrig* v. *Peters*, 41 Mich. 478. We think this testimony was hearsay, and should have been received only for the purpose of impeachment. *Catlin* v. *Railroad Co.*, 66 Mich. 364.

It is urged that this testimony is admissible as part of the *res gestœ*, citing from 21 Am. & Eng. Enc. Law, 102: "Declarations regarding personal injuries are admissible as part of the *res gestœ* when there is a concurrence in point of time between the act and the declaration." The trouble with this contention is that the testi-

mony admitted did not relate to the injury, but was an inquiry as to where Van Alstine got his whisky.

The judgment is reversed, and a new trial ordered.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. LONG, C. J., did not sit.